MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2021 ME 16
Docket:       Aro-19-500
Argued:       September 17, 2020
Decided:      March 30, 2021

Panel:        MEAD, GORMAN, JABAR, HUMPHREY, and HORTON, JJ.
Majority:     MEAD, GORMAN, HUMPHREY, and HORTON, JJ.
Dissent:      JABAR, J.

BERNARD NADEAU

v.

TWIN RIVERS PAPER COMPANY, LLC

HORTON, J.

[¶1]  Bernard Nadeau appeals from the summary judgment entered by the Superior Court (Aroostook County, *Stewart, J.*) in favor of Twin Rivers Paper Company, LLC (Twin Rivers) on Nadeau's claim under the Maine Whistleblowers' Protection Act (WPA), 26 M.R.S. §§ 831-840 (2020).  *See* M.R. Civ. P. 56(c).  Nadeau contends that the court erred in concluding that his claim is preempted by the combined effect of section 301 of the federal Labor Management Relations Act (LMRA), 29 U.S.C. § 185(a) (LEXIS through Pub. L. No. 116-259), and section 837 of the WPA.  We disagree and affirm the summary judgment.

## I. BACKGROUND

### A. Factual Background

[¶2]   The following facts are drawn from the parties' statements of material facts and reflect the record viewed in the light most favorable to Nadeau as the nonprevailing party.  *McCandless v. Ramsey*, 2019 ME 111, ¶ 4, 211 A.3d 1157.  Nadeau worked at a paper mill in Madawaska from 1980 until his termination in 2016.  Twin Rivers owned and operated the mill at all times relevant to the complaint.  Nadeau was a member of the United Steelworkers Union, and the terms of his employment were governed by a collective bargaining agreement (CBA) negotiated by the Union and Twin Rivers' management.  The CBA set forth rules governing employee conduct, safety policies, and disciplinary procedures.  The CBA also established procedures for employees to bring grievances against management and for independent arbitration of disputes.

[¶3]  In February 2015, Nadeau made a complaint to his supervisor and others about poor ventilation in his work area and his exposure to toxic chemicals and industrial dust.

[¶4]  In November of that same year, Nadeau violated safety protocols while unloading pallets of oil barrels from a tractor-trailer.  Although Twin

Rivers concluded that Nadeau was subject to termination as a result of this action and his previous violations, Twin Rivers' management offered Nadeau the opportunity to enter into a last chance agreement (LCA). The LCA allowed Nadeau to avoid termination but required him to forego some protections afforded him by the terms of the CBA.

[¶5] The CBA refers to LCAs in the context of employee discipline:

An employee's personnel and disciplinary record will be cleared of his/her discipline after two (2) years if there has been no further infraction. No discipline that is older than two (2) years (without further infraction) will be used to justify the future discipline of an employee, except in cases of documented Workplace Violence/Harassment Policy violations or flagrant disregard or repeated violations of Safety Rules. Last Chance Letters supersede this language and will expire according to the terms of [the LCA].

[¶6] In Nadeau's case, the LCA provided that any further failure to adhere to work rules would result in immediate termination. In addition, it provided that, if he were terminated, he would be entitled to pursue a grievance under the procedures set forth in the CBA but would "have no recourse to arbitration." The LCA stated, "Thus[,] the Company's decision on a grievance related to your discharge will be afforded due process through the grievance process, but the Company's decision regarding the issue(s) will be final." The LCA also stated that it "will *remain* in effect for the remainder of your employment." (Emphasis in original.) The LCA also made it clear that Nadeau would be terminated if he

4

"cho[]se not to accept this Last Chance Agreement."  The Union negotiated the LCA on Nadeau's behalf, and the Union, Nadeau, and Twin Rivers each signed the agreement.

[¶7]   After agreeing to the LCA, Nadeau complained to Twin Rivers' management about unhealthy conditions in his workplace.   Later, on August 27, 2016, Nadeau was operating a fork lift at the mill and made contact with a core saw.  He did not report this to his supervisor.  After an investigation, Twin Rivers' management concluded that Nadeau's failure to report the accident violated a CBA work rule and therefore triggered the termination clause of the LCA.  Twin Rivers terminated Nadeau's employment, and Nadeau filed a grievance pursuant to the CBA and LCA.  Twin Rivers offered Nadeau the opportunity to resign, which he declined in favor of pursuing the grievance. Twin Rivers ultimately denied the grievance and upheld Nadeau's termination. Although the CBA contains an arbitration clause, the LCA provided that Nadeau gave up any right to appeal the denial of his grievance to arbitration and that Twin Rivers' decision on any grievance concerning his employment would be final.

B.      Procedural History

[¶8]  On September 11, 2018, Nadeau filed a single-count complaint in the Superior Court, alleging that Twin Rivers violated the WPA, 26 M.R.S. § 833(1), by terminating his employment in retaliation for his complaints regarding unsafe work conditions at the mill.  Twin Rivers moved for summary judgment, M.R. Civ. P. 56(b), arguing that no genuine disputes of material fact existed and that it was entitled to judgment as a matter of law because Nadeau's WPA claim was preempted by section 301 of the LMRA, 29 U.S.C. § 185(a), in combination with section 837 of the WPA, 26 M.R.S. § 837.  Nadeau opposed the motion.

[¶9]  After oral argument on the motion, the trial court concluded that, in light of the undisputed facts, Twin Rivers was entitled to summary judgment as a matter of law.  The court held that adjudication of Nadeau's WPA claim would require it to interpret the CBA in order to decide what rights the CBA confers for purposes of applying section 837 of the WPA but that section 301 of the LMRA removed from state courts the authority to interpret a CBA.  The court's analysis relied primarily on United States Supreme Court precedent and relevant case law from the United States Court of Appeals for the First Circuit and the United States District Court for the District of Maine.

[¶10]  Nadeau timely appealed from the summary judgment.[1]  *See* 14 M.R.S. § 1851 (2020); M.R. App. P. 2B(c)(1).

## II.  DISCUSSION

[¶11]  Nadeau raises three issues on appeal that we view as one common issue: whether Nadeau's WPA claim is preempted by virtue of section 301 of the federal LMRA and section 837 of the WPA.[2]

[¶12]  "We review the entry of an order for summary judgment de novo for errors of law, viewing the evidence in the light most favorable to the party against whom summary judgment was entered."  *Puritan Med. Prods. Co. LLC v. Copan Italia S.P.A.*, 2018 ME 90, ¶ 10, 188 A.3d 853.  "Federal pre-emption, which involves issues of statutory and constitutional interpretation, is a question of law reviewed de novo."  *Id.* ¶ 11 (quotation marks omitted).

## A.  The Federal Preemption Framework

[¶13]  The Supremacy Clause of the United States Constitution states that the "Constitution, and the Laws of the United States . . . shall be the supreme

---

[1]  In response to our published invitation for amicus briefs, three organizations submitted amicus briefs: the Maine Employment Lawyers Association and Maine AFL-CIO, the Maine Human Rights Commission, and the New England Legal Foundation.

[2]  Nadeau's brief identifies the issues as follows: (1) whether the effect of section 837 is to exclude employees covered by a CBA from the protections of the WPA; (2) whether his claim can be adjudicated without a substantive interpretation of the Twin Rivers CBA; and (3) whether the Superior Court's ruling creates a "state common law rule" that itself would be preempted under federal labor law.

Law of the Land." U.S. Const. art. VI, cl. 2. Where state and federal law conflict, the federal law preempts the conflicting state law. *Gibbons v. Ogden*, 22 U.S. (9 Wheat.) 1, 210-11 (1824).

[¶14] The preemptive federal law at issue here is the statutory grant of jurisdiction over disputes relating to collective bargaining agreements in industries affecting commerce contained in section 301 of the LMRA. *See* 29 U.S.C. § 185(a) ("Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties . . . .").

[¶15] In a series of decisions from the 1950s to the 1990s, the Supreme Court defined the scope of section 301's preemptive effect. *See Livadas v. Bradshaw,* 512 U.S. 107 (1994)*; Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246 (1994); *Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399 (1988); *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202 (1985); *Local 174, Teamsters v. Lucas Flour Co.*, 369 U.S. 95 (1962); *Textile Workers Union of Am. v. Lincoln Mills of Ala.*, 353 U.S. 448 (1957).

[¶16] The Court has consistently held that it was Congress's intent that disputes involving the interpretation of labor agreements "must be resolved by

8

reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort." *Lueck*, 471 U.S. at 211. The *Lueck* Court reiterated the Supreme Court's rationale, first set forth in *Lucas Flour Co.*, 369 U.S. at 103, for construing the preemptive effect of section 301 broadly:

> The interests in interpretive uniformity and predictability that require that labor-contract disputes be resolved by reference to federal law also require that the meaning given a contract phrase or term be subject to uniform federal interpretation. Thus, questions relating to what the parties to a labor agreement agreed, and what legal consequences were intended to flow from breaches of that agreement, must be resolved by reference to uniform federal law, whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort. Any other result would elevate form over substance and allow parties to evade the requirements of § 301 by relabeling their contract claims as claims for tortious breach of contract.

*Lueck*, 471 U.S. at 211.

[¶17] However, the Court noted that section 301 preemption is not complete:

> [N]ot every dispute concerning employment, or tangentially involving a provision of a collective-bargaining agreement, is pre-empted by § 301 or other provisions of the federal labor law.... Nor is there any suggestion that Congress, in adopting § 301, wished to give the substantive provisions of private agreements the force of federal law, ousting any inconsistent state regulation. Such a rule of law would delegate to unions and unionized employers the power to exempt themselves from whatever state labor standards they disfavored.... In extending the

> pre-emptive effect of § 301 beyond suits for breach of contract, it would be inconsistent with congressional intent under that section to pre-empt state rules that proscribe conduct, or establish rights and obligations, independent of a labor contract.

*Id*. at 211-12 (footnote omitted). Thus, whether a state law claim is subject to section 301 preemption is a function of "whether evaluation of the . . . claim is inextricably intertwined with consideration of the terms of the labor contract." *Id.* at 213.

[¶18]   In *Lingle*, the plaintiff alleged that she had been unlawfully discharged in retaliation for exercising her rights under the Illinois Workers' Compensation Act.[3]   486 U.S. at 402.   The federal district court dismissed her complaint, concluding that the "claim for retaliatory discharge [was] 'inextricably intertwined' with the collective bargaining provision . . . and that allowing the state-law action to proceed would undermine the arbitration procedures set forth in the parties' contract." *Id.* (quotation marks omitted).

---

[3] The plaintiff, a union member, notified her employer that she had been injured during the course of her employment and requested compensation pursuant to the Illinois Workers' Compensation Act. *Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399, 401 (1988).   The employer discharged her six days later for "filing a 'false worker's compensation claim.'" *Id.*   The union filed a grievance pursuant to the CBA alleging that she had not been discharged for proper or just cause. *Id.*   The CBA defined grievance as "any dispute between . . . the Employer and any employee, concerning the effect, interpretation, application, claim of breach or violation of this agreement" and required any grievance to be sent to arbitration. *Id* at 402 (quotation marks omitted).

[¶19]   This holding was based on the district court's view that a determination of the claim would involve the same analysis of facts as the inquiry in any arbitration under the CBA.[4]   *Id.*   The question ultimately presented to the United States Supreme Court was "whether an employee covered by a collective-bargaining agreement that provides her with a contractual remedy for discharge without just cause may enforce her state-law remedy for retaliatory discharge."  *Id.* at 401.

[¶20]   The Court agreed that the state law analysis might involve the same factual considerations as the terms of the CBA but disagreed with the conclusion that the state law claim was so inextricably intertwined with and dependent upon the CBA as to be preempted.  *Id.* at 407.  The Court explained,

> In other words, even if the dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for [section] 301 pre-emption purposes.

*Id.* at 409-410.

---

[4] The state law claim was for "the tort of retaliatory discharge for filing a worker's compensation claim." *Lingle,* 486 U.S. at 406-407.  To prove this, "the plaintiff must set forth sufficient facts . . . that (1) he was discharged or threatened with discharge and (2) the employer's motive in discharging or threatening to discharge him was to deter him from exercising his rights under the Act or to interfere with his exercise of those rights." *Id.* at 407 (quotation marks omitted).

[¶21]  Quoting *Lueck,* 471 U.S. at 211, the *Lingle* Court, in a footnote, stated that "not every dispute . . . tangentially involving a provision of a collective-bargaining agreement[] is pre-empted by [section] 301."  *Lingle,* 486 U.S. at 413 n.12.  For example, when a CBA contains information regarding rate of pay and other benefits that would be relevant to the amount of the damages award on a state law claim, the underlying state law claim would not be preempted.  *Id.*  The Court stated,

> Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement.  In such a case, the federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted.

*Id.*  The Court ultimately held that the claim was not preempted and that "an application of state law is pre-empted by [section] 301 of the [LMRA] *only if* such application requires the interpretation of a collective-bargaining agreement."  *Id.* at 413 (emphasis added).

[¶22]  Six years later, in *Hawaiian Airlines,* a plaintiff alleged, among other claims, that he was wrongfully terminated in violation of the state's whistleblower protection act.[5]  512 U.S. at 250.  The Court restated the

---

5  When the plaintiff refused to sign a maintenance record to certify that a repair had been performed satisfactorily, his supervisor suspended him pending a termination hearing, and he was eventually fired for insubordination.  *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 248-251.  The

12

principles enunciated in *Lingle*: "In a case remarkably similar to the case before us now, this Court made clear that the existence of a potential CBA-based remedy did not deprive an employee of independent remedies available under state law."[6] *Id.* at 261.

[¶23] Disagreeing that interpreting the CBA was necessary to determine whether the respondent was in fact discharged, the Court held that "the issue to be decided in this action—whether the employer's actions make out the element of discharge under Hawaii law—is a purely factual question." *Id.* at 266 (quotation marks omitted). Additionally, the Court disagreed with the petitioners' claim that interpreting the CBA was required to determine whether the termination was justified, stating instead that "the state tort claims . . . require only the purely factual inquiry into any retaliatory motive of the employer." *Id.*

---

plaintiff invoked the grievance procedures outlined in his CBA, arguing that the CBA stated that an "employee may not be discharged without just cause and may not be disciplined for refusing to perform work that is in violation of health or safety laws." *Id.* at 250. The plaintiff filed suit in state court alleging multiple claims, including a wrongful-discharge tort in violation of the state's whistleblower protection act. *Id.* The state trial court dismissed the claim and held that it was preempted by the Railroad Labor Act. *Id.* at 251.

[6] The Supreme Court reasoned that "the common purposes of the two statutes, the parallel development of [Railroad Labor Act] and [LMRA] pre-emption law, and the desirability of having a uniform common law of labor law pre-emption support the application of the *Lingle* standard in RLA cases as well." *Hawaiian Airlines, Inc.,* 512 U.S. at 263 n.9 (citations omitted).

[¶24]  In *Livadas v. Bradshaw*, the Court stated that, "when the meaning of contract terms is not the subject of dispute, the bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished."  512 U.S. at 124 (citing *Lingle,* 486 U.S. at 413 n.12).

[¶25]  These decisions, considered together, indicate that whether section 301 preempts a state law claim is to be decided on a case-by-case basis. *See Lueck,* 471 U.S. at 208 ("Congress . . . has never exercised authority to occupy the entire field in the area of labor legislation.").  In determining whether a state law claim is preempted, the United States Supreme Court has instructed courts to determine whether the claim is inextricably intertwined with the CBA or if the claim can be decided based solely on a factual inquiry.  *See Lueck*, 471 U.S. at 213; *Lingle,* 486 U.S. at 407; *Hawaiian Airlines, Inc.,* 512 U.S. at 266.

B.      The Effect of Maine Whistleblowers' Protection Act Section 837

[¶26]  The WPA protects an employee against retaliation for making a good faith report to the employer of what the employee has reasonable cause to believe is a violation of a law:

> **1. Discrimination prohibited.**  No employer may discharge, threaten or otherwise discriminate against an employee regarding

the employee's compensation, terms, conditions, location or privileges of employment because:

> **A.** The employee, acting in good faith . . . reports orally or in writing to the employer . . . what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States.

26 M.R.S. § 833(1)(A).

[¶27] The WPA includes a provision that prohibits it from being construed "to diminish or impair the rights of a person under any collective bargaining agreement." 26 M.R.S. § 837. The Act defines the term "person" broadly to include individuals and legal entities. *See id.* § 832(3) ("'Person' means an individual, sole proprietorship, partnership, corporation, association or any other legal entity."). Therefore, section 837 applies to the rights of the unions, employers, and employees that are parties to, or are benefited by, a CBA.

[¶28] WPA's section 837 unambiguously prevents any application or interpretation of the WPA that results in the diminution or impairment of the rights of an employee, an employer, or a union under a CBA. To avoid diminishing or impairing rights conferred by a CBA, the court or the jury in a WPA case must interpret the CBA to determine what rights it confers.

[¶29]  In that sense, LMRA section 301 and WPA section 837 appear to point in opposite directions.  Section 301 prohibits in-depth substantive interpretation of a CBA for purposes of deciding a WPA claim, whereas section 837 may necessitate such an interpretation to ensure that the court does not construe the WPA in a manner that diminishes or impairs the rights of a union, an employer, or a union member under the CBA.  In this manner, section 837 introduces to the section 301 preemption analysis a potentially countervailing element absent from the Supreme Court decisions in *Lueck, Lingle,* and *Hawaiian Airlines.*

C.     Precedent Under LMRA Section 301 and WPA Section 837

[¶30]   We have not previously addressed the interplay between section 301 of the LMRA and section 837 of the WPA,[7] but the United States District Court for the District of Maine has addressed the issue in several decisions on which the Superior Court relied in concluding that Nadeau's WPA claim is preempted.  *See Bishop v. Bell Atl. Corp.,* 81 F. Supp. 2d 84, 86-91 (D. Me. 1999); *Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 135-139 (D. Me. 2010); *Webb v. Calais Reg'l Hosp.*, No. 1:18-cv-00117-LEW, 2019 U.S.

---

[7]  Nadeau and amicus Maine Human Rights Commission note that we have previously upheld a union member's right to assert a WPA claim, but the preemption issue Twin Rivers raises here was not raised in that case. *See Bard v. Bath Iron Works Corp.,* 590 A.2d 152, 156-157 (Me. 1991).

16

Dist. LEXIS 113266, at *4-7 (D. Me. July 9, 2019). This line of cases is the focus of much of the parties' and the amici's briefing and merits detailed discussion.

[¶31] In *Bishop*, the plaintiff, whose employment was subject to a CBA, alleged "retaliation and discrimination with regard to his compensation, terms, conditions, and privileges of employment, in violation of the Maine Whistleblowers' Protection Act . . . and the Maine Human Rights Act."[8] 81 F. Supp. 2d at 86. The court held that the plaintiff's WPA claim was preempted by section 301(a) of the LMRA but that the Maine Human Rights Act (MHRA) claim was not. *Id.* at 91. The court reasoned that the determination of the parties' rights under the CBA for purposes of section 837 would require it "to interpret the CBA between Bell Atlantic and [the plaintiff's] Union in order to ensure that the Whistleblowers' Act [did] not 'diminish or impair the rights' of those operating under the CBA."[9] *Id.* at 88-89.

---

[8] The plaintiff alleged that once he reported that his supervisor physically assaulted him, the employer began interfering with his overtime opportunities and "wrote him up" for alleged work infractions. *Bishop*, 81 F. Supp. 2d 84, 86 (D. Me. 1999).

[9] The court in *Bishop* relied on three First Circuit cases. *See Lydon v. Boston Sand & Gravel Co.*, 175 F.3d 6, 11 (1st Cir. 1999); *Martin v. Shaw's Supermarkets, Inc.*, 105 F.3d 40, 43 (1st Cir. 1997); *Magerer v. John Sexton Co.*, 912 F.2d 525, 529-30 (1st Cir. 1990). The plaintiff-employees in those cases, all of whom were governed by CBAs, alleged that they had been retaliated against for exercising rights contained in the Massachusetts Workers' Compensation Act (MWCA). *Bishop*, 81 F. Supp. 2d at 87.

The court concluded that, in each case, the claim was preempted because section 75(b) of the MWCA provided that "[i]n the event that any right set forth in this section is inconsistent with an applicable collective bargaining agreement, such agreement will prevail." *Id.* (quotation marks omitted). The court reasoned that this section required the court to interpret whether the CBA was

[¶32]  In a subsequent decision, *Carmichael v. Verso Paper, LLC,* the Maine federal district court said, "Because the [WPA section 837] provision specifically require[d] the [c]ourt to interpret the CBA to determine whether the []WPA would diminish or impair rights under the CBA, [the plaintiff's] []WPA claim [was] preempted."  679 F. Supp. 2d at 136.

[¶33]  In 2019, the Maine federal district court, citing *Bishop* and *Carmichael*, characterized section 301 as "necessarily" preempting any WPA claim when the plaintiff is subject to a CBA: "[T]his court has resoundingly held that when a Plaintiff whose employment is subject to a CBA brings a claim under the Maine Whistleblowers' Protection Act, *that claim is necessarily preempted* by Section 301 of the Labor Management Relations Act."  *Webb,* 2019 U.S. Dist. LEXIS 113266, at *5 (emphasis added).

[¶34]  Nadeau and the amici that endorse his position argue that the decisions in *Bishop, Carmichael*, and *Webb* are "poorly reasoned" and "erroneous" and urge us to endorse a different line of decisions holding that whistleblower claims brought under statutes similar to Maine's can be asserted in court by plaintiffs whose employment is subject to CBAs.  *See, e.g., Carlson v.*

---

inconsistent with the MWCA.  *Id*.  In *Lydon,* the court gave further instructions, stating that "[c]ourts confronted with state law claims must therefore locate the line between the need for mere consultation of a CBA, which does not demand federal preemption, and more active interpretation of that agreement, which does preempt the state law claims."  175 F.3d at 10.

18

*Arrowhead Concrete Works, Inc.,* 375 F. Supp. 2d 835 (D. Minn. 2005); *Rosen v. Transx, Ltd.,* 816 F. Supp. 1364 (D. Minn. 1993); *Schroeder v. Crowley Mar. Corp.,* 825 F. Supp. 1007 (S.D. Fla. 1993);[10] *Williams v. Stafford Transp. of Mich., Inc.,* No. 330628, 2017 Mich. App. LEXIS 853 (Mich. Ct. App. May 23, 2017). These cases stand for the proposition that, contrary to the *Bishop*, *Carmichael*, and *Webb* line of cases, a whistleblower claim is not necessarily preempted by the combination of the prohibition in LMRA section 301 of interpreting CBAs and the inquiry into rights provided by a CBA that is dictated by state statutes such as WPA section 837.

[¶35] We are not required to follow any lower federal court decision, even as to matters of federal law, so we could endorse the view of either line of

---

[10] The *Schroeder* decision actually involved a state whistleblower statute similar to WPA section 837, but the court's conclusion that the plaintiff's whistleblower claim survived preemption seems questionable. The court said:

> [T]he Florida [whistleblower] [s]tatute does provide that the statute does not diminish the rights of an employer or employee under any collective bargaining agreement. Thus, the [c]ourt may need to look to the agreement to see whether the defendant is able to avoid liability under the statute in this case. However, this does not render the plaintiff's right "dependent" upon the collective bargaining agreement; the plaintiff's claim, therefore, is not pre-empted by § 301.

*Schroeder v. Crowley Mar. Corp.*, 825 F. Supp. 1007, 1009 (S.D. Fla. 1993) (citing Fla. Stat. § 448-105 (LEXIS through 2020 Reg. Sess.)).

What seems self-contradictory about the court's reasoning is that, if "look[ing] to the agreement" might result in the defendant being "able to avoid liability under the statute," the court's evaluation of the whistleblower claim plainly would be "dependent" upon, or at least "inextricably intertwined" with, the terms of the CBA. *Lueck*, 471 U.S. at 213.

cases. *See Evans v. Thompson,* 518 F.3d 1, 8 (1st Cir. 2008) ("State courts are not bound by the dictates of the lower federal courts, although they are free to rely on the opinions of such courts when adjudicating federal claims." (emphasis omitted)). This case, however, does not require us to decide whether every WPA claim by a union employee is "necessarily preempted."[11] Nadeau's WPA claim, as presented, is preempted under either line of cases.

D.     Nadeau's WPA Claim as Presented

[¶36]  The single count of Nadeau's complaint alleges a WPA claim. The complaint asserts that Twin Rivers violated the CBA by requiring him to choose between signing the LCA and being terminated. Specifically, it alleges that Twin Rivers "relied on discipline dating back to 1986 to support its decision to place Plaintiff on the LCA—despite the fact that discipline older than two years was

---

[11]  One example of when a union employee's WPA claim may not be preempted by either section 301 or section 837 appears in *Galouch v. Department of Professional & Financial Regulation,* 2015 ME 44, 114 A.3d 988. The WPA plaintiff, an employee represented by a union, contested her termination in arbitration pursuant to the applicable CBA and won. *Id.* ¶ 8. Thereafter, she brought an action in state court, alleging that her termination was in violation of the WPA. *Id.* ¶ 9. Her WPA claim failed on its merits because she failed to prove that she had engaged in activity protected by the WPA. *Id.* The key point for our purposes here, however, is that because she had already prevailed in arbitration, there was no reason for the court in the WPA case either to interpret the terms of the CBA or to consider whether applying the WPA would diminish or impair the rights of a party to the CBA. The preemption issue appears not to have been raised in the trial court or on appeal, and it did not need to be, because the WPA plaintiff had already prevailed in arbitration. *Id.* ¶ 8. *Galouch* may serve as an example of when a CBA would present no obstacle to an employee's assertion of a WPA claim.

not to be considered in disciplinary considerations under the union's collective bargaining agreement with Defendant."

[¶37]  Although Nadeau contends that "[at] summary judgment, Nadeau did not dispute or challenge the imposition of the LCA," his summary judgment filings indicate otherwise.  Nadeau, in his reply statement of material facts, denied Twin Rivers' contention that "Article 27.03 of the CBA allows the company, the employee and the union to negotiate an LCA modifying the CBA for discipline with respect to the employee."  In the same reply statement, Nadeau acknowledged that he "contends that Twin Rivers should not have considered his history of safety infractions when it put him on a LCA because of Article 27:03 of the CBA."  His brief on appeal states that "Nadeau's placement on the LCA is offered as evidence of retaliatory animus."  Nadeau's reply brief attempts to backtrack from his challenge to Twin Rivers' interpretation of the LCA provision of the CBA, stating that "the creation of the LCA is irrelevant to the resolution of this case."

[¶38]  Because Nadeau's WPA claim relies on what he claims are Twin Rivers' violations of the CBA, the adjudication of his WPA claim would require a determination of whether Twin Rivers did, in fact, violate the CBA.  This would in turn require an in-depth interpretation of at least the work rule and

discipline provisions of the CBA to an extent that is precluded by section 301 of the LMRA.

[¶39]  Nadeau's WPA claim seeks to negate aspects of the LCA through a collateral attack on the LCA's validity.  His claim would compel the court to determine whether the CBA in fact gave Twin Rivers the right to enforce the LCA because, if Twin Rivers had that right, Nadeau's WPA claim would "diminish or impair" Twin Rivers' right to enforce the LCA, a result that is prohibited by section 837.  Nadeau's claim also raises the question of whether, if the LCA were deemed invalid, the CBA's arbitration clause would give Twin Rivers the right to compel Nadeau to pursue his whistleblower claim, at least initially, in arbitration rather than in litigation.

[¶40]  In sum, the adjudication of Nadeau's WPA claim, as he has presented it, would clearly compel the court to delve into the meaning of specific CBA provisions well beyond the limited extent permitted by section 301 of the LMRA and would run headlong into WPA section 837.[12]  We

---

[12]  The dissent characterizes our decision today as being broader than it is.  Our conclusion is specific to Nadeau's WPA claim because his claim as presented would indeed require the court or a jury to reach a conclusion as to whether or not the WPA actually impairs or diminishes anyone's rights under the CBA.  We do not hold that every WPA claim by a union employee is "necessarily preempted."  *See supra* ¶ 35 n.11.

What the dissent does not explain is how Nadeau could present his WPA claim in a manner that would not require the court or a jury either to go well beyond "merely having to examine" the CBA in

22

therefore conclude that Nadeau's WPA claim is preempted because "evaluation

of the . . . claim is inextricably intertwined with consideration of the terms of

the labor contract." *Lueck,* 471 U.S. at 213.

## III. CONCLUSION

[¶41]   Because we conclude that Nadeau's claim is preempted by the

operation of LMRA section 301 in combination with WPA section 837, we affirm

the grant of summary judgment.

---

violation of section 301 or to apply the WPA in a way that diminishes or impairs rights under the CBA in violation of section 837.  For example, the dissent states,

In a trial, Twin Rivers can argue that it properly terminated Nadeau because Nadeau violated the rules under the CBA.  Countering this explanation as the reason for the termination, Nadeau can argue that even though Twin Rivers claims that it terminated him pursuant to the CBA, the real motive for firing him was as retaliation for complaining about the hazardous work conditions.

Dissenting Opinion ¶ 69.

The problem is that unless Nadeau were to stipulate that Twin Rivers had the right under the CBA to terminate him—a step he did not take in the summary judgment process—the court or the jury could not evaluate Twin Rivers' argument without construing and applying at least the work rule, discipline, and LCA provisions of the CBA to an extent well beyond the limited review permitted under section 301.

The dissent also states,

> Twin Rivers claims that it terminated Nadeau for valid reasons under the CBA, but Nadeau may prove that the stated reasons were pretextual if he can show an ulterior motive, e.g., a retaliatory animus.

Dissenting Opinion ¶ 79.

But if Twin Rivers had "valid reasons"—i.e., the right—to terminate Nadeau under the CBA, the question becomes how can Nadeau pursue a WPA claim without diminishing or impairing that right within the meaning of section 837?  The dissent provides no answer to this question, and we see no answer that would allow Nadeau's WPA claim to proceed without contravening section 301, section 837, or both.

The entry is:

Judgment affirmed.

_____

JABAR, J., dissenting.

[¶42]  I respectfully dissent because the Court's decision today virtually eliminates the right of a union worker to bring a whistleblower action pursuant to 26 M.R.S. §§ 831-840 (2020).  Instead of following the majority of federal court, including United States Supreme Court, cases, which hold that merely examining a collective bargaining agreement (CBA) does not trigger federal preemption under section 301 of the Labor Management Relations Act (LMRA), the Court follows the flawed rationale contained in a line of cases from the United States District Court for the District of Maine that hold that 26 M.R.S. § 837 of Maine's Whistleblowers' Protection Act (WPA) requires the court to examine the CBA and that this examination alone triggers federal preemption, regardless of whether section 837 impairs anyone's rights under the CBA.

[¶43] WPA is an independent state remedy created by the Legislature for all workers.  It provides protections and remedies well beyond any provisions of a CBA, including the right to a jury trial and the ability to recover

24

compensatory damages, punitive damages, and attorney fees. The Court's decision eliminates those statutory rights and creates a disparity between union workers who are subject to a CBA and nonunion workers who are not. When the Legislature enacted the WPA, it did not intend to discriminate against union workers.

A.    Federal Preemption—Section 301 of the Labor Management Relations Act

[¶44]  The United States Supreme Court provided clear instruction "that it is the legal character of a claim, as independent of rights under the [CBA], (and not whether a grievance arising from precisely the same set of facts could be pursued) that decides whether a state cause of action may go forward. . . . [W]hen the meaning of contract terms is not the subject of the dispute, the bare fact that a [CBA] *will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished.*"  *Livadas v. Bradshaw*, 512 U.S. 107, 123-24 (1994) (emphasis added) (footnote omitted) (citations omitted) (quotation marks omitted); *see also Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 266 (1994)*; Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 213 (1985); *Lingle v. Norge Div. of Magic Chef,* 486 U.S. 399, 413 (1988)*.*

[¶45]  In applying this standard, the Supreme Court in *Hawaiian Airlines* disagreed with the petitioners' argument that an examination of the CBA was

necessary to determine whether the union worker was discharged and instead stated that "*Lingle* teaches that the issue to be decided in this action—whether the employer's actions make out the element of discharge under Hawaii law—is a 'purely factual question.'"[13]  512 U.S. at 266 (quoting *Lingle,* 486 U.S. at 407). Additionally, the Supreme Court disagreed with the petitioners' claim that interpreting the CBA was required to make a determination that the termination was justified, stating instead that the "state tort claims . . . require only the purely factual inquiry into any retaliatory motive of the employer."  *Id.*

[¶46]  Numerous federal courts and other state courts have followed the Supreme Court's holdings, indicating that merely consulting a CBA is not enough to trigger preemption.  In *Baldracchi v. Pratt & Whitney Aircraft Division, United Technologies Corporation*, the United States Court of Appeals for the Second Circuit, quoting the Supreme Court, stated, "'[C]learly, § 301 does not grant the parties to a [CBA] the ability to contract for what is illegal under state law.'  We take this to mean that even if the labor agreement provided that [the employer] could discharge an employee who filed a workers' compensation

---

[13]  The employee was an aircraft mechanic who refused to sign a maintenance record to certify that a repair had been performed satisfactorily.  *Hawaiian Airlines, Inc. v. Norris,* 512 U.S. 246, 248 (1994).  He was fired for insubordination and appealed through the grievance procedures outlined in his CBA, arguing that the CBA stated that an "employee may not be discharged without just cause and may not be disciplined for refusing to perform work that is in violation of health or safety laws."  *Id.* at 249-50.

claim, the provision would have no effect on [the employee's] claim under the Connecticut statute. Thus, it is difficult to see how determination of that claim can be said to depend on the [CBA]." 814 F.2d 102, 105 (2d Cir. 1987) (quoting *Lueck*, 471 U.S. at 212); s*ee also* Conn. Gen. Stat. § 31-290a (LEXIS through the 2020 Sept. Spec. Sess.).

[¶47] The Second Circuit also stated that "it should be noted that the position urged by [the employer] would have the effect of granting less state law protection to employees governed by [CBAs] than to other employees. While a non-union Connecticut worker's right to file a workers' compensation claim would remain protected by section 31-290a, union members like [the employee] would be protected only by their [CBAs]." *Id.* at 107. In grappling with the disparity between union workers and nonunion workers, the court recognized that its decision would have a far-reaching effect and chose to honor the state statute's intended protection of *all* workers.

[¶48] The Court spends seven pages discussing the Supreme Court cases that stand for the legal concept that merely examining the CBA is not enough to trigger federal preemption but then ignores those holdings and instead follows the rationale of *Bishop, Carmichael,* and *Webb* by holding that "merely" having

to examine the CBA is enough.[14]  Court's Opinion ¶¶ 13-25.  The Court attempts to distinguish the leading Supreme Court cases on the basis that "section 837 introduces to the section 301 preemption analysis a potentially countervailing element absent from the Supreme Court decisions in *Lueck, Lingle,* and *Hawaiian Airlines.*"  Court's Opinion ¶ 29.

[¶49]  *Bishop v. Bell Atlantic Corp.* was the beginning of a series of cases from the United States District Court for the District of Maine that narrowly construed the preemption doctrine to hold that claims under the WPA were essentially preempted if a CBA existed *because* section 837 was included in the Act.  81 F. Supp. 2d 84, 88 (D. Me. 1999).  Instead of looking to the other states with identical or similar statutory language to our own, the District Court looked solely to cases based on the Massachusetts Workers' Compensation Act (MWCA),[15] *see* Mass. Gen. L. ch. 152 §§ 75A-75B (LEXIS through Ch. 1-259,

---

[14]  The Court's Opinion cites our decision in *Galouch v. Department of Professional and Financial Regulation* for the proposition that it is an example of "when a union employee's WPA claim may not be preempted by either section 301 or section 837."  Court's Opinion ¶ 35 n.11; *see Galouch v. Dep't of Prof. & Fin. Regul.,* 2015 ME 44, 114 A.3d 988.  However, in *Galouch,* neither the issue of federal preemption nor the effect of section 837 were raised in the case.  2015 ME 44, ¶ 8, 114 A.3d 988.  In that case, we affirmed the trial court's summary judgment for the employer since the facts did not support the worker's claim of protected activity.  *Id.* ¶¶ 10, 18.

[15]  The Massachusetts Workers' Compensation Act makes it illegal for an employer to retaliate against an employee for exercising rights contained in the Act, and the statute includes the following section: "In the event that any right set forth in this section is inconsistent with an applicable [CBA], such agreement shall prevail.  An employee may not otherwise waive rights granted by this section."  Mass. Ann. Laws ch. 152, § 75B(3) (LEXIS through Ch. 1-259, 264-315 and the Nov. ballot measures of the 2020 Leg. Sess. of the 191st Gen. Ct.).

264-315 and the Nov. ballot measures of the 2020 Leg. Sess. of the 191st Gen. Ct.), and reasoned that the inclusion of section 837 in the WPA was "essential for federal preemption of the [WPA] claim" because it required the court to interpret the [CBA] to determine whether there is any "impairment" of a person's rights. *Id.* at 88-89.

[¶50]  The *Bishop* court concluded that merely consulting the CBA, without ever determining whether there was an impairment of a person's rights under it, would be in violation of the First Circuit's holding that interpreting a CBA as part of the adjudication of a state law claim triggered the application of the preemption doctrine.[16]  *Id.* at 89.  The *Bishop* court went so far as to say that "if the Whistleblowers' Act did not contain this provision in section 837, it is highly unlikely that [the employee's] claim would be preempted under section 301 of the LMRA." *Id.* at 88.  Neither the *Bishop* court

---

[16] The *Bishop* court also reasoned that since the Maine Human Rights Act (MHRA) did not include a provision like section 837, then claims brought under that statute were not preempted and this provided another reason to hold that section 837 required preemption. *Bishop v. Bell Atl. Corp.,* 81 F. Supp. 2d 84, 89 (D. Me. 1999).  The Maine Human Rights Commission, which is responsible for the enforcement of the WPA, provided an amicus brief for this case and stated that both the WPA and the MHRA "are intended to be interpreted broadly, and their exceptions narrowly.  Rather than abiding by this guiding principle, the lower court's decision holding that WPA claims are preempted by § 301 . . . created an arbitrary rule that would prevent WPA claims by an employee in a unionized workplace.  This decision is contrary to the plain language of the statute, the Commission's long-standing interpretation of the statute, and decisions by the United States Supreme Court . . . and this Court."  Brief for Maine Human Rights Commission as Amicus Curiae Supporting Appellant at 4-5.

nor the trial court in this case, nor this Court in its decision today, determined whether section 837 impaired anyone's rights under the CBA.

[¶51]  A line of Maine federal district court cases followed *Bishop* and held that it would not make any difference as to whether the WPA would *actually* diminish or impair any rights under the CBA, but rather simply making any determination regarding the statute triggers the preemption doctrine.  *See Carmichael v. Verso Paper, LLC*, 679 F. Supp. 2d 109, 135-36 (D. Me. 2010); *Webb v. Calais Reg'l Hosp.*, No. 1:18-cv-00117-LEW, 2019 U.S. Dist. LEXIS 113266, at *5-6 (D. Me. July 9, 2019).  As recently as 2019, the District Court stated that "this court has resoundingly held that when [an employee] whose employment is subject to a CBA brings a claim under the [WPA], that claim is *necessarily preempted* by Section 301 of the [LMRA]."  *Webb*, 2019 U.S. Dist. LEXIS 113266, at *6 (emphasis added); *see also Carmichael,* 679 F. Supp. 2d at 136 ("[A]ny []WPA claim made by an employee working under a CBA is almost by definition intertwined with an interpretation of the CBA and therefore preempted.").

[¶52]  The *Bishop* line of cases has, in effect, held that section 837 triggers federal preemption in all whistleblower claims made by union workers.  This is inconsistent with the decisions of the United States Supreme Court and it is

30

inconsistent with the other states that have identical or similar whistleblower protection acts.

[¶53] Courts in other states, with statutory provisions similar to those in section 837, have found that claims brought under whistleblower statutes are not preempted by section 301. *See Carlson v. Arrowhead Concrete Works, Inc.*, 375 F. Supp. 2d 835, 842 (D. Minn. 2005) ("The Court finds that [the employee's] Whistleblower Act[17] . . . claim [is] not preempted by section 301. The Supreme Court's analysis in *Lingle* is instructive. Establishing a claim for retaliation under . . . the Whistleblower Act . . . only requires an analysis of factual questions pertaining to [the employee's] conduct and [the employer's] conduct and motivation and requires no analysis of any provisions or terms of the Agreement."); *Schroeder v. Crowley Mar. Corp.*, 825 F. Supp. 1007, 1009 (S.D. Fla. 1993) (holding that the [employer's] reliance on Florida's whistleblower act section that is similar to our own section 837[18] was incorrect because the Supreme Court precedent "stand[s] for the proposition that a state law claim is

---

[17] The Minnesota act includes the following provision: "This section does not diminish or impair the rights of a person under any [CBA]." Minn. Stat. Ann. § 181.932(4) (LEXIS through Ch. 2 of the 2021 Reg. Sess. of the 92nd Leg.).

[18] The Florida act includes the following provision: "This act does not diminish the rights, privileges, or remedies of an employee or employer under any other law or rule or under any [CBA] or employment contract." Fla. Stat. § 448.105 (LEXIS through 2020 gen. leg.).

pre-empted by § 301 when it is impossible to determine whether the [employee] is entitled to relief without interpreting the [CBA] . . . . In this case, the [employee's] right exists independently of the [CBA]. To determine whether the [employee] is entitled to relief under the statute, the Court must only determine whether [the employee] was terminated in retaliation for his refusal to disobey the law" (citations omitted)); *Williams v. Stafford Transp. of Mich., Inc.*, No. 330628, 2017 Mich. App. LEXIS 853, at *5-6 (Mich. Ct. App. May 23, 2017) ("[The employee] correctly states that the LMRA does not preempt claims under the [Michigan] Whistleblowers' Protection Act[19] . . . even if those claims pertain to reporting wrongdoing relating to an employer's labor practices.").

[¶54]  These courts recognize that language in a whistleblower statute indicating that it cannot be construed to diminish the rights of the parties under a CBA does not automatically trigger federal preemption and, further, that the retaliation claims are not preempted because they "only require[] analysis of factual questions and require[] no analysis of any provisions or terms of the [CBA]." *Rosen v. Transx, Ltd.*, 816 F. Supp. 1364, 1371 (D. Minn. 1993).

---

[19]  The Michigan act includes the following provision: "This act shall not be construed to diminish or impair the rights of a person under any [CBA]." Mich. Comp. Laws Serv. § 15.366 (LEXIS through Pub. Act 1-402 and E.R.O. 2020-3 from the 2020 Leg. Sess.).

[¶55]  To follow *Bishop* et al., as this Court has done, is to prohibit *all* union workers from accessing the protection of the WPA.  We should follow the Supreme Court's holdings regarding federal preemption, because those holdings adopt the policy of affording union workers the same protection afforded nonunion workers.

[¶56]  Although the Court argues otherwise, Court's Opinion ¶ 40 n.12, its holding today necessarily prevents a union worker from filing a WPA claim. If all union workers are employed under a CBA, and if the Court's holding that section 837 of the WPA requires consultation of the CBA to determine whether the WPA claim impairs anyone's rights under the CBA, and if this consultation alone, regardless of whether there actually is an impairment, triggers federal preemption, then a union worker's WPA claim will always trigger federal preemption.

B.     State Whistleblower Protection Acts

[¶57] Whistleblower protection acts serve to protect individuals because it is critical that workers know that the law protects them for speaking up and in turn it is critical that employers know that they will face consequences if they retaliate against their workers.

[¶58] In 1983, the Maine Legislature borrowed language from Michigan's Whistleblower Protection Act to enact the WPA. 26 M.R.S. §§ 831-839; *see* L.D. 736, Statement of Fact (111th Legis. 1983) ("Maine is not breaking new ground with the passage of this bill. This bill is modeled on the Michigan 'Whistleblowers' Protection Act.'"). In *Bard v. Bath Iron Works Corp.,* we held that there was no need for us to recognize the tort of wrongful discharge because "where a statutory right and remedy are provided, there is no need to recognize a redundant tort. The Whistleblowers' Protection Act embodies a statutory public policy against discharge in retaliation for reporting illegal acts, a right to the discharged employee, and a remedial scheme to vindicate that right." 590 A.2d 152, 156 (Me. 1991) (citation omitted).

[¶59] The WPA, which is similar to whistleblower statutes in other states,[20] includes a provision that states that it "shall not be construed to diminish or impair the rights of a person under any [CBA]." 26 M.R.S. § 837. The plain meaning of the section is to prevent the WPA from weakening the rights contained in, or interfering with the provisions of, a CBA. *See*

---

[20] *E.g.,* N.H. Rev. Stat. Ann. §§ 275-E:1–275-E:9 (LEXIS through the 2020 Reg. Sess. (Act Ch. 39)); R.I. Gen. Laws §§ 28-50-1–28-50-9 (LEXIS through all acts of the 2020 Sess. (through ch. 80), including corrections by the Dir. of Law Revision); Minn. St. Ann. § 181.932 (LEXIS through Ch. 2 of the 2021 Reg. Sess. of the 92nd Leg.); Del. Code Ann. tit. 19, §§ 1701-1708 (LEXIS through 83 Del. Laws, ch. 6); Fla. Stat. §§ 448.101-105 (LEXIS through 2020 gen. leg.).

*Wawenock, LLC v. Dep't of Transp.*, 2018 ME 83, ¶ 7, 187 A.3d 609 ("The first and best indicator of legislative intent is the plain language of the statute itself."). Section 837 comes into play only because the *Bishop* court held that merely consulting section 837 to determine whether the WPA impairs the employer's rights under the CBA triggers federal preemption. *See* 81 F. Supp. 2d at 88-89.

[¶60] The Court's opinion does not present any analysis as to why the mere examination of the CBA, as contemplated by section 837, would, either as a mechanism to trigger federal preemption or on its own, impair anyone's rights under the CBA. The Court states that Nadeau's claim "would clearly compel the court to delve into the meaning of specific CBA provisions well beyond the limited extent permitted by section 301 of the LMRA and would run headlong into the WPA section 837." Court's Opinion ¶ 40. However, again there is no analysis whatsoever as to why there is a need for a substantive analysis of the CBA, nor any discussion as to what that analysis would be.

[¶61] Furthermore, the Supreme Court cases discussed above, in both the majority opinion and in our dissent, do not limit their holdings that merely examining the CBA is not enough to trigger federal preemption. *E.g., Livadas v. Bradshaw*, 512 U.S. 107, 123-124 (1994). If there is an examination of the CBA,

a problem arises only when a state court interpretation conflicts with the federal interpretation of the CBA under the LMRA. As the *Lingle* court instructed, state law is not preempted by the mere fact that resolving the dispute pursuant to the terms of the CBA and resolving the dispute pursuant to the WPA "would require addressing precisely the same set of facts." 486 U.S. at 410. Further, if there is a state law claim that "may depend for its resolution upon both the interpretation of a [CBA] and a separate state-law analysis that does not turn on the agreement[,] . . . federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted." *Id.* at 413 n.12.

[¶62] The Court ignores the holdings of the United Court Supreme Court cases and follows the holdings in *Bishop*, *Carmichael*, and *Webb*. The Court also ignores the purpose of the WPA, an independent state law right, which is to provide protection to all employees and not just to provide protection for nonunion employees. *See* 26 M.R.S. §§ 832-833.

C.    Nadeau's Claim

[¶63] As the *Lueck* Court instructed, a state law's insulation from preemption depends on whether it confers "nonnegotiable state-law rights" on the parties to a contract, *or* "whether evaluation of the . . . claim is inextricably

intertwined with consideration of the terms of the labor contract." 471 U.S. at 213. This is the analysis that we should follow in this case.

### 1. Nonnegotiable State Law Right

[¶64] The WPA provides a state-created remedy that Nadeau has available to him that was created by the Legislature for *all* workers in Maine, a remedy independent of any rights an employee or an employer may have under a CBA. As the *Lueck* Court instructed, "Clearly, § 301 does not grant the parties to a [CBA] the ability to contract for what is illegal under state law." 471 U.S. at 212. The WPA makes it illegal for an employer to punish a worker for reporting safety violations or refusing to break the law and provides a legal path to obtain protection and remedies. 26 M.R.S. § 833. This protection is not something that a union worker can bargain away in a CBA because it is an independent right provided to protect all employees.

[¶65] Maine's WPA prohibits employers from "discharg[ing], threaten[ing] or otherwise discriminat[ing] against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because" the employee, while acting in good faith, reports wrongdoing. 26 M.R.S. § 833(1). To trigger the protections in the Act, an employee must first bring the "alleged violation, condition or practice to the

attention" of a supervisor and must give "the employer a reasonable opportunity to correct that violation, condition or practice" unless the employee has a specific reason to believe that this will not result in change. 26 M.R.S. § 833(2). If the employee has brought the claim to the attention of the employer or has a specific reason not to, then the employee "may bring a complaint before the Maine Human Rights Commission for action under Title 5, section 4612." 26 M.R.S. § 834.

[¶66] Upon receiving a complaint, the Maine Human Rights Commission will conduct a preliminary investigation, after which it may order a dismissal of the complaint, seek conciliation, file a civil action, or provide the complainant with a right-to-sue letter. 5 M.R.S. § 4612 (2020). If a civil action is commenced, the Superior Court will hear the case, and if "unlawful discrimination occurred" then "its judgment must specify an appropriate remedy or remedies for that discrimination." 5 M.R.S. § 4613(2)(B) (2020).

[¶67] The difference between the remedies available under a CBA and under the WPA are substantial. While the remedies for a breach of a CBA are limited to requiring the employer to reinstate the employee and pay the employee back wages, *Norris v. Hawaiian Airlines, Inc.*, 842 P.2d 634, 647 (1992), the possible remedies under the WPA include a cease-and-desist order,

an order to employ or reinstate the victim with or without back pay, compensatory and punitive damages, and reasonable attorney's fees and costs. *Id.*; 5 M.R.S. § 4614 (2020). Furthermore, if a "party seeks compensatory or punitive damages," then the plaintiff is afforded the right to a jury trial. 5 M.R.S. § 4613 (2)(B)(8)(g).

2.      Inextricably Intertwined

[¶68]  The Court states that a "court or . . . jury could not evaluate Twin Rivers' argument without construing and applying at least the work rule, discipline, and LCA provisions of the CBA to an extent well beyond the limited review permitted under section 301." Court's Opinion ¶ 40 n.12. However, this conclusory statement does not actually explain how Nadeau's claim would impair Twin Rivers' rights under the CBA and is flawed for two reasons.

[¶69]  First, at the time Nadeau brought his WPA lawsuit, the CBA proceedings were complete and Nadeau was terminated, and thus he did not need "to stipulate that Twin Rivers had the right under the CBA to terminate him" because there was no impairment of Twin Rivers' right to discipline and terminate Nadeau under the CBA. Court's Opinion ¶ 40 n.12. Second, a judge or jury does not have to agree with the result reached in a proceeding taken under the CBA; a remedy under a CBA is independent of the WPA which instead

requires the worker to prove a retaliatory motive. In a trial, Twin Rivers can argue that it properly terminated Nadeau because Nadeau violated the rules under the CBA. Countering this explanation as the reason for the termination, Nadeau can argue that even though Twin Rivers claims that it terminated him pursuant to the CBA, the real motive for firing him was as retaliation for complaining about the hazardous work conditions.

[¶70] In *Lingle*, the Supreme Court discussed the possibility that there may be conflict between the finality of an action taken by the employer against the worker pursuant to the CBA and a court decision regarding a worker's state claim:

> The operation of the antidiscrimination laws does, however, illustrate the relevant point for § 301 pre-emption analysis that the mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that *co-incidentally violates state law does not make the existence or the contours of the state-law violation dependent upon the terms of the private contract*. For even if an arbitrator should conclude that the contract does not prohibit a particular discriminatory or retaliatory discharge, that conclusion might or might not be consistent with a proper interpretation of state law. In the typical case a state tribunal could resolve either a discriminatory or retaliatory discharge without interpreting the "just cause" language of a [CBA].

486 U.S. at 412-413 (emphasis added).

[¶71]  Here, Nadeau, after receiving a right-to-sue letter from the Maine Human Rights Commission, filed a complaint in Superior Court alleging that Twin Rivers retaliated against him in violation of the WPA.  The three elements of a WPA retaliation claim are that "[(1)] [he] engaged in statutorily protected activity; [(2)] [his] employer made an employment decision that adversely affected [him]; and [(3)] . . . there was a causal link between the protected activity and the adverse employment action." *Doyle v. Dep't of Hum. Servs.*, 2003 ME 61, ¶ 20, 824 A.2d 48 (quotation marks omitted).

[¶72]  When the employer moves for a summary judgment in a WPA retaliation case, the employer has the "burden to show that there is no genuine issue as to any material fact, and that the evidence fails to establish a prima facie case for each element of the cause of action."  *Brady v. Cumberland Cnty.*, 2015 ME 143, ¶ 39, 126 A.3d 1145 (citation omitted) (quotation marks omitted).  Furthermore, the court must view the record "in the light most favorable to . . . the nonprevailing party." *McCandless v. Ramsey*, 2019 ME 111, ¶ 4, 211 A.3d 1157.

[¶73]  Nadeau has presented facts demonstrating that he reported dangerous work conditions to a supervisor on multiple occasions over a six-month period.  Nadeau has also presented facts establishing that he was

wrongfully disciplined and terminated from his employment. In its motion for summary judgment, Twin Rivers stated that it "would concede . . . the second element of the claim (adverse action), and [it] might well also concede the first (protected activity)." Twin Rivers has not provided any facts to dispute that Nadeau was engaged in protected activity.

[¶74] The only issue that remains is whether Nadeau has presented sufficient evidence to establish an issue of material fact regarding causation. Nadeau contends that, viewing the facts in the light most favorable to him,[21] it could be inferred that there is a causal link between the protected activity and

---

[21] He asserts that he made a number of reports to his supervisor about the unsafe workplace conditions, specifically in regard to poor ventilation and exposure to toxic chemicals and industrial dust. He reported that he was developing adverse health reactions and that he had fears about this since several former employees, who worked in the same area, developed cancer. One day after making one of his reports, his supervisor yelled at him, "You're a cancer, and I am going to get rid of you!" He reported this and his concerns to the shop steward and local president, but Twin Rivers took no action.

Nadeau continued to report his concerns of the health risks. In November of 2018, Nadeau was accused of failing to follow the "lock-out/tag-out" policy after assisting a delivery truck driver and coworker unloading oil drums. The coworker and the truck driver were not disciplined, but Nadeau was disciplined for the single violation.

Eight months after being placed on the LCA, Nadeau made his last report to his supervisor about the ventilation issues in the basement. A week later, Nadeau's forklift made contact with a core saw, and upon inspection he did not notice any damage, and did not report the incident. No one mentioned anything about the incident until five days later, when Nadeau received a phone call from his supervisor stating that he had damaged the core saw and that he was not able to return to work until he met with personnel representatives.

At a "fact-finding" meeting with his union officers and company personnel Nadeau explained that "he inspected the saw and there was no noticeable damage." Two days after that meeting Twin Rivers gave Nadeau his termination notice.

the adverse action taken by Twin River. A jury could conclude that retaliation for Nadeau's whistleblower activity was a substantial factor in Twin Rivers' decision to discipline and terminate him pursuant to the CBA provisions. A jury is not bound by the findings of an arbitrator or actions taken by an employer under a CBA. *Lingle,* 486 U.S. at 412-413.

[¶75] Nadeau contends that, even though Twin Rivers followed the CBA provisions regarding disciplining and terminating him, the imposition of discipline against him demonstrates an inconsistent and unequal application of discipline given that others violated the same policy and received no discipline. He contends that this is evidence of retaliatory animus.

[¶76] Given the elements required and the facts Nadeau put forth to prove his case, at least at this point, there is no evidence of any conflict with the CBA. The use of the CBA provisions during the grievance proceedings leading to Nadeau's discipline is not at issue in this case.

[¶77] However, today, the Court implicitly adopts the *Bishop* approach in holding that section 837 requires an interpretation of the CBA, and therefore merely having to examine the CBA is enough to trigger federal preemption, whether or not enforcing Nadeau's rights under the WPA would actually impair Twin Rivers' rights under the CBA. Aside from the fact that this is not the

prevailing rule under federal case law, an examination of the discipline and termination process taken by Twin Rivers pursuant to the CBA clearly shows that Nadeau's WPA claim did not impair Twin Rivers' rights under the CBA.

[¶78] The WPA did not prevent Twin Rivers from disciplining and terminating Nadeau under the CBA. Furthermore, Nadeau did not bring his WPA lawsuit until all actions by Twin Rivers under the CBA were completed. There is no need to interpret the work rules in the CBA that Nadeau violated and were the purported basis for Twin Rivers' decision to terminate because, as the Supreme Court said in *Hawaiian Airlines*, regardless of whether the company could have terminated the worker under the CBA rules, the question for the jury is simply one of causation—whether the termination of the worker was motivated by a retaliatory animus. "Nor are we persuaded by [the employers'] contention that the state tort claims require a determination whether the discharge, if any, was justified by [the employee's] failure to [comply with a particular company policy], as the CBA required him to do. Although such a determination would be required with regard to [the employee's] separate allegation of discharge in violation of the CBA, the District Court dismissed that count as preempted . . . and [the employee] does not challenge that dismissal. The state tort claims, by contrast, require only the

44

purely factual inquiry into any retaliatory motive of the employer." *Hawaiian Airlines,* 512 U.S. at 266.

[¶79] Twin Rivers claims that it terminated Nadeau for valid reasons under the CBA, but Nadeau may prove that the stated reasons were pretextual if he can show an ulterior motive, e.g., a retaliatory animus.[22] Although the Court states that its decision is not as broad as to remove the rights of all union workers, it is evident from reading the Court's holding that this is the clear result because even if a worker can prove that his termination for violating rules under the CBA was pretextual, the Court would dismiss the complaint because section 837's required examination of the CBA triggers federal preemption. Court's Opinion ¶ 40 n.12.

[¶80] Nadeau has the right under Maine's WPA to present his case to the court and to try to convince a jury that the real reason Twin Rivers terminated

---

[22] In *Trott v. H.D. Goodall Hospital,* we cautioned that "when judges evaluate a summary judgment record, they should be mindful that what might initially appear to be a weak case of pretext is not the same as no case. Proof produced by the employee should be evaluated with an awareness that reasonable jurors can and often do disagree as to both the weight and meaning of evidence." 2013 ME 33, ¶ 20, 66 A.3d 7. *See also Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990) ("[The Act] is violated if a retaliatory motive played a part in the adverse employment actions even if it was not the sole cause and if the employer was motivated by retaliatory animus, [the Act] is violated even if there were objectively valid grounds for the discharge." (citation omitted)); *Baldracchi v. Pratt & Whitney Aircraft Div.*, *United Techs. Corp.,* 814 F.2d 102, 105 (2d Cir. 1987) (the court disagreed with the employer's argument "that determining whether its proffered reason for firing [the employee] was 'legitimate,' i.e., for 'just cause' under the labor agreement, would require interpretation of that agreement").

him was as retaliation for his protected activity and that he is entitled to the protection and remedies available under the WPA.

D.    Conclusion

[¶81]  Today's holding significantly impacts the right of all union workers to file WPA actions.  Since all union workers are covered by a CBA, the Court's holding today necessarily means that any WPA action brought by a union worker will bring section 837 into play, and since, according to the Court, section 837 requires an examination of the CBA, federal preemption requires a dismissal of the action without any determination of whether the WPA actually impairs or diminishes anyone's rights under the CBA.  In addition to the fact that such a holding discriminates against union workers, it conflicts with the clear message from the United States Supreme Court cases holding that merely examining the CBA is insufficient to trigger federal preemption.

[¶82]  As is apparent in numerous federal cases, including the Supreme Court cases, union employees who were terminated pursuant to a CBA are nevertheless able to pursue their independent state claims.  The Court's holding today is contrary to a majority of United States District Court cases, United States Courts of Appeals cases, and United States Supreme Court cases.

46

[¶83]   Here, federal law does not preempt the WPA, and summary judgment is not a substitute for trial.  *See Arrow Fastener Co. v. Wrabacon, Inc.*, 2007 ME 34, ¶ 18, 917 A.2d 123 ("[A]lthough summary judgment is no longer an extreme remedy, it is not a substitute for trial.").  I would vacate the Superior Court's decision and remand so that Nadeau may pursue his whistleblower claim against Twin Rivers.

---

James A. Clifford, Esq., and Andrew P. Cotter, Esq. (orally), Clifford & Clifford, LLC, Kennebunk, for appellant Bernard Nadeau

James R. Erwin, Esq. (orally), Pierce Atwood LLP, Portland, for appellee Twin Rivers Paper Company, LLC

Barbara Archer Hirsch, Esq., Maine Human Rights Commission, Augusta, for amicus curiae Maine Human Rights Commission

John W. VanLonkhuyzen, Esq., Verrill Dana LLP, Portland, for amicus curiae New England Legal Foundation

David G. Webbert, Esq., Carol J. Garvan, Esq., Valerie Z. Wicks, Esq., Braden A. Beard, Esq., and Shelby H. Leighton, Esq., Johnson, Webbert & Young, LLP, Augusta, for amici curiae Maine Employment Lawyers Association and Maine AFL-CIO

Aroostook County Superior Court (Caribou) docket number CV-2018-153
FOR CLERK REFERENCE ONLY