MAINE SUPREME JUDICIAL COURT                                    Reporter of Decisions
Decision:    2015 ME 44
Docket:      Ken-14-347
Argued:      April 7, 2015
Decided:     April 30, 2015

Panel:       SAUFLEY, C.J., and ALEXANDER, <u>MEAD</u>, GORMAN, JABAR, and HJELM, JJ.

## PATRICIA GALOUCH

v.

## DEPARTMENT OF PROFESSIONAL AND FINANCIAL REGULATION

MEAD, J.

[¶1]  Patricia Galouch appeals from an entry of summary judgment by the Superior Court (Kennebec County, *Murphy, J.*) in favor of the Department of Professional and Financial Regulation (Department) on her claim that the Department violated her rights under the Maine Human Rights Act (MHRA), 5 M.R.S. § 4572 (2014), and the Maine Whistleblowers' Protection Act (WPA), 26 M.R.S. § 833 (2014).  Galouch contends that the court erred in concluding that she did not (1) engage in protected activity, (2) experience an adverse employment action, or (3) present sufficient evidence that the Department's reasons for her termination were pretext for discriminatory animus.[1]  We affirm the judgment.

---

[1]  On cross-appeal, the Department argues that Galouch is bound by factual findings made in a prior collective bargaining agreement arbitration decision.  Because we affirm the judgment, we need not address the Department's claim.

## I. BACKGROUND

[¶2]   From May 6, 2006, to October 22, 2010, Patricia Galouch was employed as an Office Associate II and Legal Secretary at the Maine Bureau of Insurance (Bureau), an agency within the Department.   In March 2009, the Department reached a settlement agreement with Galouch and the Maine State Employees Association (Union), which had filed several grievances on her behalf. Pursuant to that settlement, Galouch was given a position as a legal secretary at the Bureau.   In addition, the Department removed all previous discipline from Galouch's personnel file and paid her attorney fees; in return, the Union withdrew all pending grievances, and Galouch withdrew all pending complaints she had filed with the Maine Labor Relations Board and the Maine Human Rights Commission. Galouch, the Union, and the Department also agreed to have regular meetings to discuss potential employment-related issues.

[¶3]  Starting in March 2009, Galouch communicated with a court reporter about the court reporter's contractual obligations with the Department.  Galouch believed that the court reporter had breached the terms of her service contract with the Department regarding the ability to subcontract and whether to provide amplification services for rate hearings.  She believed that these breaches of contract violated the Bureau of General Services' Rules for Purchase of Services and Awards, 18-554 C.M.R. ch. 110 (1996).  When Galouch informed her

supervisors of her concerns in June 2009, she was instructed to refer any contract issues to the Bureau's contract administrator rather than address them herself because they were not part of her responsibilities. Despite this directive, Galouch continued to communicate directly with the court reporter.

[¶4]  In December 2009, Galouch was asked to send a cover letter to an insurance agent regarding a petition for enforcement, notifying the agent that his license could be revoked and a hearing would be held on the matter. The cover letter Galouch actually sent, however, erroneously stated that the agent's license had already been revoked. As a result of this action, Galouch received an oral reprimand from her supervisor in December of 2009 and, in the same month, the Union filed a grievance on her behalf challenging the reprimand.[2]

[¶5]  In January 2010, the court reporter Galouch had continued to communicate with informed the Bureau that she was terminating her contract with the Department because she could no longer deal with Galouch's behavior. On January 28, 2010, the State placed Galouch "under investigation for allegations that [she] exceeded the authority and/or duties of [her] position" and put her on paid administrative leave.

---

[2]  At some point this grievance was denied.

4

[¶6]   In February 2010, the Union filed a second grievance on Galouch's behalf, asserting that she had been subjected to a hostile work environment, intimidation, and harassment.[3]

[¶7]   On July 9, 2010, a state investigator notified Galouch that the investigation had "now been expanded to include allegations of additional performance issues discovered since you were placed on leave, including instances of significant inattention to detail, entering incorrect information into a national database, and failure to follow direction."   After completion of the investigation and a hearing on the matter, the Department terminated Galouch's employment on October 22, 2010.  The Commissioner concluded that Galouch "was disorganized, messy, inattentive to details, and careless when entering information into databases.   She argued with vendors about their contracts, could not follow directions, argued with the Bureau's Superintendent in public, and was careless about how documents were sent out.   She verbally attacked her co-workers and supervisor when questioned about her work."

[¶8]  The Union filed a grievance challenging Galouch's termination and an arbitration hearing was held over eight days between March 22 and July 17, 2012. At issue was whether the Department had just cause to terminate Galouch, and, if not, what the remedy should be.   In a decision dated November 13, 2012, the

---

[3]   The record is silent with regard to the outcome of this grievance.

arbitrator concluded that the Department did not have just cause to terminate Galouch because it failed to impose "progressive discipline." Due to the March 2009 settlement agreement, the only disciplinary action in Galouch's file preceding the termination was the December 2009 oral reprimand. The arbitrator awarded Galouch back pay from the date of her termination to the date of the award, along with any verifiable medical expenses. Galouch was not reinstated, however, because the arbitrator concluded that she was a "disaster" at her job and that to return her to work would "recreate an intolerable situation which is of no benefit to anyone." Many of the arbitrator's findings regarding Galouch's performance deficiencies confirmed the findings made by the Department.

[¶9] After obtaining a right-to-sue letter from the Maine Human Rights Commission, Galouch sued the Department in May 2012, alleging violations of the MHRA and the WPA. In her amended complaint, Galouch referred to both the December 2009 grievance (¶ 9) and the February 2010 grievance (¶ 18). On February 15, 2013, the court denied the Department's motion to dismiss. On December 17, 2013, the court denied without prejudice the Department's motion for summary judgment, concluding that the motion was premature because no discovery had been conducted on the issue of pretext.

[¶10] After further discovery, the court granted the Department's second motion for summary judgment on July 22, 2014. It concluded that Galouch failed

6

to establish a prima facie case of discrimination because she did not present evidence that she had reasonable cause to believe that she was reporting unlawful activity when she informed her supervisors of her concerns about the court reporter's contract. It also found that (1) Galouch failed to show that the Department's reasons for firing her were pretextual, and (2) paid administrative leave did not constitute adverse employment action. Galouch appealed, and the Department cross-appealed on the issue of collateral estoppel.

## II.  DISCUSSION

[¶11]  We review de novo the grant of summary judgment, viewing the evidence in the light most favorable to the nonprevailing party to determine if there are any genuine issues of material fact. *Day v. Town of Phippsburg*, 2015 ME 13, ¶ 10, 110 A.3d 645. "When evaluating employment discrimination claims at the summary judgment stage, we apply a three-step, burden-shifting analysis to determine whether (1) the employee has presented prima facie evidence of discrimination; (2) the employer has presented prima facie evidence of a legitimate, non-discriminatory reason for the adverse action; and, in response, (3) the employee has presented prima facie evidence that the employer's proffered reason is pretextual or untrue." *Fuhrmann v. Staples Office Superstore E., Inc.*, 2012 ME 135, ¶ 13, 58 A.3d 1083.

[¶12] "The MHRA prohibits employers from discriminating against employees because of actions protected under the WPA." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 12, 915 A.2d 400. The WPA states in relevant part that no employer may discharge an employee because the employee, "acting in good faith, . . . reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States." 26 M.R.S. § 833(1)(A) (2014). "To prevail on a [WPA] claim, an employee must show that (1) he engaged in activity protected by the WPA; (2) he experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Hickson v. Vescom Corp.*, 2014 ME 27, ¶ 17, 87 A.3d 704 (quotation marks omitted). Because we conclude that Galouch did not engage in WPA-protected activity, we do not reach the second or third elements.

A.    Galouch's Reports Regarding a Court Reporter's Contract

[¶13]  The court concluded that even if Galouch "subjectively believed that the practices at issue were illegal, she has not presented the kind of evidence from which a fact-finder could draw a reasonable inference that it was reasonable for her to believe that unlawful activity was taken by the employer." Galouch contends that the court erred in finding that she failed to raise a genuine dispute about

whether she had reasonable cause to believe that the court reporter's conduct was in violation of a law or rule.

[¶14]  As we have previously stated in the context of complaints about safety issues, the WPA

> protects only complaints made in good faith, and only reports made with reasonable cause to believe a dangerous condition or practice exists.  The requirement that a report be made in good faith is met when, for example, a report is motivated by a desire to stop the dangerous condition.  The reasonable cause requirement is met only when the employee presents evidence showing that she had a subjective belief that a dangerous condition or practice existed, *and that the belief was objectively reasonable* in that a reasonable person might have believed that a dangerous condition existed.

*Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 11, 13 A.3d 773 (quotation marks omitted) (emphasis added).  Thus, in order to withstand a motion for summary judgment here, the record must "support a finding that [Galouch] reasonably believed that some sort of . . . illegality had occurred." *Fuhrmann*, 2012 ME 135, ¶ 16, 58 A.3d 1083; *see Bard v. Bath Iron Works Corp.*, 590 A.2d 152, 154-55 (Me. 1991) ("[T]he Maine Whistleblowers' Protection Act . . . requires an employee to prove that a reasonable person might have believed that the employer was acting unlawfully."); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261-62 (1st Cir. 1999) ("Neither state nor federal law requires that the reported condition, activity, or practice actually *be* unsafe or illegal; under either scheme, an employee's reasonable belief that it crosses the line

suffices, as long as the complainant communicates that belief to his employer in good faith.").

[¶15] The court did not commit error here. Galouch has not presented any evidence to support the allegation that a "reasonable person might have believed that" what she reported to her supervisors—i.e., the alleged breach of contract by the court reporter—was illegal activity. *Stewart-Dore*, 2011 ME 26, ¶ 11, 13 A.3d 773 (quotation marks omitted). To be sure, the WPA does not require an employee be able to cite to a particular statute or rule that may have been violated.[4] But Galouch's subjective belief alone is insufficient to meet the WPA's "reasonable cause" requirement. 26 M.R.S. § 833(1)(A); *see Bard*, 590 A.2d at 154-55. In *Bard,* the employee brought a WPA claim alleging that he was fired after reporting to his supervisors that his employer had violated a clause in its contract with the Navy. 590 A.2d at 153. We affirmed the grant of judgment as a matter of law in favor of the employer because the evidence "at trial established no more than that [the employee] believed that a violation of *contract* provisions might have occurred." *Id.* at 154. The employee failed "to present[] any other evidence to show that he had reasonable cause to believe that [Bath Iron Works] had violated any law or rule adopted under the laws of this State, a political

---

[4] The regulation that Galouch did reference, 18-554 C.M.R. ch. 110 (1996), provides rules for the purchase of services and awarding of contracts by the State pursuant to 5 M.R.S. §1825-C (2014). It does not, by any reasonable reading, make the court reporter's actions unlawful.

subdivision of this State or the United States," as required by the WPA. *Id.* (quotation marks omitted).

[¶16] Similarly, even assuming that the court reporter here was in breach of her contract with the Department, a reasonable person could not consider that conduct to be a violation of the law. *See, e.g.*, *Testa v. Town of Madison*, No. CIV.04-185-B-W, 2005 WL 2365319, at *9 (D. Me. Sept. 26, 2005) *aff'd*, No. CIV.04-185-B-W, 2005 WL 2864785 (D. Me. Nov. 1, 2005) (granting summary judgment on a WPA claim because "a reasonable person standing in [the plaintiff's] shoes would not consider [the complained-of conduct] to be unlawful"); *Tripp v. Cole*, 425 F.3d 5, 9 (1st Cir. 2005) (affirming summary judgment on a WPA claim where "a reasonable person would not have considered [the defendant's] request to be" illegal). The court properly concluded that Galouch's reports about the court reporter's conduct did not constitute protected activity.

B.    Grievances

[¶17]    Galouch also argues that the two grievances she filed in December 2009 and February 2010 constitute protected activity. The grievances, although referred to in her complaint, are not in the summary judgment record. The limited facts properly before the Court regarding the December 2009 grievance—that Galouch received an oral reprimand, the Union filed a grievance on her behalf, and an arbitrator ultimately upheld the discipline—are insufficient to

support a finding necessary to make out a claim under the WPA. The only reference to the February 2010 grievance is found in the amended complaint. But "record references to the complaint are insufficient to defend against a motion for summary judgment." *Beaulieu v. The Aube Corp.*, 2002 ME 79, ¶ 30 n.14, 796 A.2d 683; *see Small v. Durango Partners, LLC*, 2007 ME 99, ¶ 17, 930 A.2d 297 ("In . . . summary judgment proceedings, [the plaintiffs] cannot rely solely on the allegations in their complaint."). Galouch's submissions therefore fail to sufficiently raise the grievances as possibly protected activity.

[¶18] On this record, the court properly granted summary judgment to the Department on the ground that Galouch did not engage in activity protected by the WPA. We therefore do not address Galouch's arguments on pretext or adverse employment action.

The entry is:

Judgment affirmed.

**On the briefs:**

James A. Clifford, Esq., Clifford & Clifford, LLC, Kennebunk, for appellant Patricia Galouch

Janet T. Mills, Attorney General, and Kelly L. Morrell, Asst. Atty. Gen., Office of the Attorney General, Augusta, for appellee Department of Professional and Financial Regulation

Brett D. Baber, Esq., Lanham Blackwell & Baber, P.A., Bangor, and David G. Webbert, Esq., Johnson, Webbert, & Young, LLP, Augusta, for amicus curiae Maine Employment Lawyers Association

James R. Erwin, Esq., Pierce Atwood LLP, Portland, for amicus curiae Maine State Chamber of Commerce

**At oral argument:**

James A. Clifford, Esq., for appellant Patricia Galouch

Kelly L. Morrell, Asst. Atty. Gen., for appellee Department of Professional and Financial Regulation

Kennebec County Superior Court docket number CV-2012-175
FOR CLERK REFERENCE ONLY