MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2022 ME 2
Docket:       Cum-21-90
Argued:       November 4, 2021
Decided:      January 6, 2022

Panel:        STANFILL, C.J., and MEAD, GORMAN, JABAR, HUMPHREY, HORTON, and CONNORS, JJ.


MARGARET HANDLIN

v.

BROADREACH PUBLIC RELATIONS, LLC


MEAD, J.

[¶1]  Margaret Handlin appeals from a summary judgment entered in the Superior Court (Cumberland County, *Kennedy, J.*) in favor of Broadreach Public Relations, LLC, (Broadreach) on Handlin's complaint alleging unlawful discrimination, retaliation, and discharge in violation of the Whistleblowers' Protection Act (WPA), 26 M.R.S. §§ 831-840 (2021); the Maine Human Rights Act, 5 M.R.S. §§ 4551-4634 (2020);[1] and 26 M.R.S. § 570 (2021), which prohibits discrimination against an employee who reports or participates in an investigation regarding an occupational safety or health hazard.  Handlin also

---

[1]  Portions of the Maine Human Rights Act have been amended since the operative time of this action, but not in any way that affects the present appeal.  *E.g.*, P. L. 2021, ch. 366, (effective Oct. 18, 2021) (titled "An Act To Improve Consistency in Terminology and within the Maine Human Rights Act").

appeals from the court's denial of her M.R. Civ. P 60(b) motion for relief from judgment.  We affirm the judgment.

## I.  BACKGROUND

[¶2]   The following facts are drawn from Broadreach's statement of material facts[2] and the summary judgment record and are viewed in the light most favorable to Handlin as the nonprevailing party.  *See Stanley v. Hancock Cnty. Comm'rs,* 2004 ME 157, ¶ 13, 864 A.2d 169.

[¶3]   Handlin worked as a client manager at Broadreach from March 2018 until January 2019.  In her capacity as a client manager, Handlin worked with the AC Hotel Portland Downtown (AC Hotel), a client of Broadreach's.  On November 10, 2018, the majority owner and president of Broadreach held a private party at the AC Hotel that was unrelated to the hotel's business relationship with Broadreach.  On December 3, 2018, Handlin reported to her co-worker the substance of a conversation she had recently had with her client contact at the AC Hotel.  Handlin told her co-worker that her contact criticized Broadreach's president for her conduct at the November 10th

---

[2]   Handlin failed to properly respond to Broadreach's statement of material facts.  *See* M.R. Civ. P. 56(h)(2).  As a result, the court deemed Broadreach's facts admitted.  *See* M.R. Civ. P. 56(h)(4); *see also Dyer v. Dep't of Transp.,* 2008 ME 106, ¶ 15, 951 A.2d 821 ("Failure to properly respond to a statement of material facts permits a court to deem admitted any statements not properly denied or controverted.").

party and indicated that she, the contact, did not want to work with the president.  At a later deposition, Handlin could not recall the exact words that her contact used nor the exact words that she herself used when reporting these comments to her co-worker.  Handlin's report was conveyed by her co-worker to Broadreach's vice president—who was also Handlin's supervisor—and the vice president subsequently conveyed the report to Broadreach's president.

[¶4]  Upon hearing the report, the president met with the general manager of the AC Hotel on December 4, 2018.  The general manager contradicted Handlin's report and told the president that neither her private party nor her alleged conduct at the party had any relevance to the business relationship between the AC Hotel and Broadreach.  In January 2019, the president of Broadreach also met with Handlin's contact, who had been on leave during the president's December meeting with the general manager.  The contact assured the president that she had never suggested to Handlin that the president's party or conduct had any relevance to the business relationship between the AC Hotel and Broadreach.  Later that month, Handlin was offered a choice between signing a final written warning or a release and separation

4

agreement. Handlin's counsel ultimately informed Broadreach that Handlin would pursue separation.

[¶5] On February 21, 2020, after receiving a "right-to-sue" letter from the Maine Human Rights Commission, 5 M.R.S. § 4612(6), Handlin filed a complaint in the Superior Court alleging that after she made the report to her co-worker about Broadreach's president, she was targeted for warnings, counseling, and discipline that culminated in her termination from Broadreach. Handlin alleged that Broadreach was liable for retaliation against her for making a whistleblower complaint (Count 1), and for intentional and negligent infliction of emotional distress caused by the retaliation (Counts 2 and 3).

[¶6] On December 18, 2020, Broadreach moved for a summary judgment on all counts of Handlin's complaint, asserting that Handlin's report to her co-worker did not constitute a protected report pursuant to 26 M.R.S. § 833(1)(A) and, as such, Handlin was not entitled to the protections afforded whistleblowers. Broadreach served its motion for summary judgment and supporting record on Handlin electronically via email to her attorney. *See* M.R. Civ. P. 5(b). Handlin did not file an opposition to Broadreach's motion for summary judgment. On February 8, 2021, after the deadline for filing an opposition had passed, Handlin moved for an enlargement of the deadline to

respond to Broadreach's motion for summary judgment. In her motion, Handlin claimed her "counsel's failure to see the electronic service of [Broadreach's] Motion for Summary Judgment was inadvertent and unintentional" and that "sufficient good cause or excusable neglect exists to permit [Handlin] the opportunity to oppose [Broadreach's motion]."

[¶7] On February 9, 2021, the court granted Broadreach a summary judgment on all counts of Handlin's complaint, and on February 18, 2021, the court denied Handlin's motion to enlarge her response deadline. Handlin timely filed a motion for relief from judgment pursuant to M.R. Civ. P. 60(b). While awaiting the court's decision on her motion, Handlin filed a notice of appeal from the court's February 9 order granting summary judgment to Broadreach with respect to Count 1 of her complaint. *See* M.R. App. P. 2A, 2B(c)(1). The court denied Handlin's motion for relief from judgment on March 17, 2021. Handlin then filed a second notice of appeal, appealing from the denial of her motion for relief from judgment, and we consolidated her appeals. *See* M.R. App. P. 2A, 2B(c)(1).

## II. DISCUSSION

### A.    Summary Judgment

[¶8]  "We review a grant of summary judgment de novo, viewing the facts and any inferences that may be drawn from them in the light most favorable to the nonprevailing party to determine if the statements of material facts and referenced record evidence generate a genuine issue of material fact." *Cookson v. Brewer Sch. Dep't*, 2009 ME 57, ¶ 11, 974 A.2d 276.  "An issue is genuine if there is sufficient evidence supporting the claimed factual dispute to require a choice between the differing versions; an issue is material if it could potentially affect the outcome of the matter." *Brown Dev. Corp. v. Hemond*, 2008 ME 146, ¶ 10, 956 A.2d 104.  Because Handlin did not oppose Broadreach's motion for summary judgment, and because all facts asserted in Broadreach's statement of material facts are supported by appropriate record citations, those facts "must be deemed admitted." *Halliday v. Henry*, 2015 ME 61, ¶ 8, 116 A.3d 1270.

[¶9]  Because there are no genuine issues of material fact in dispute, we review de novo the trial court's interpretation and application of the relevant statutes, and we evaluate whether Broadreach is entitled to a summary judgment as a matter of law.  *See Remmes v. Mark Travel Corp.*, 2015 ME 63, ¶¶ 18-19, 116 A.3d 466.  "Summary judgment is properly granted when the

plaintiff fails to establish a prima facie case for each element of [her] cause of action." *Doe v. Williams*, 2013 ME 24, ¶ 10, 61 A.3d 718 (quotation marks omitted).

[¶10]  Handlin alleges that Broadreach violated the WPA and the Maine Human Rights Act and discriminated against her by targeting her for "warnings, counseling[,] and discipline, culminating in [her] termination" in "retaliation" for her report about Broadreach's president's alleged conduct.  *See* 5 M.R.S. §§ 4551-4634; 26 M.R.S. §§ 570, 831-840.

### 1.      Whistleblower Protection

[¶11]  "The WPA protects an employee against retaliation for making a good faith report to the employer of what the employee has reasonable cause to believe is a violation of a law."  *Nadeau v. Twin Rivers Paper Co., LLC*, 2021 ME 16, ¶ 26, 247 A.3d 717.  The WPA provides, in relevant part:

> **1.  Discrimination prohibited**.  No employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's compensation, terms, conditions, location or privileges of employment because:
>
> > **A.** The employee, acting in good faith . . . reports orally or in writing to the employer . . . what the employee has reasonable cause to believe is a violation of a law or rule adopted under the laws of this State, a political subdivision of this State or the United States.

26 M.R.S. § 833(1)(A).[3] "The Maine Human Rights Act provides a right of action to employees discharged because of protected activity." *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 9, 13 A.3d 773; 5 M.R.S. §§ 4572(1)(A), 4621.[4]

[¶12]  To prevail on her WPA claim, Handlin must show that "(1) she engaged in activity protected by the WPA; (2) she experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Stewart-Dore*, 2011 ME 26, ¶ 10, 13 A.3d 773 (alterations and quotation marks omitted); *see Costain v. Sunbury Primary Care, P.A.*, 2008 ME 142, ¶ 6, 954 A.2d 1051.  Therefore, if Handlin's report to her co-worker was not an activity protected by the statute, her entire claim fails.

[¶13] The unopposed and supported facts establish that Handlin's report to her co-worker concerned conduct of a Broadreach employee that occurred during nonwork hours at a private party while the employee was not engaged

---

[3] The legislative history of the WPA is clearly in accord with the plain language of the statute.  Its sponsors stated, "This bill protects employees from being fired for reporting violations of law by their employers and for refusing to follow a directive that violates a law."  L.D. 736, Statement of Fact (111th Legis. 1983).  Although Handlin cited to the entirety of the WPA in her initial complaint, the summary judgment record and her brief do not allege any alternative theory under the WPA.

[4] Title 5 M.R.S. § 4572(1)(A) was amended in 2021, although the amendments are not relevant in the present appeal.  *See* P.L. 2021, ch. 366, § 5 (effective Oct. 18, 2021) (to be codified at 5 M.R.S. § 4572(1)(A)).

in work for Broadreach. Even when viewing the facts in the light most favorable to Handlin and assuming that Handlin did have reasonable cause to believe that the president's conduct at her private party was a violation of a rule or law, Handlin has failed to demonstrate that her report concerned behavior that was in any way associated with her employer—Broadreach. The record presents Handlin's conversation with her co-worker as a gossipy account of the boss's party and not a whistleblowing account of a perceived violation of a law. Sharing a story with a co-worker about the boss's alleged behavior at her nonwork event is not the exposure of wrongdoings the WPA was intended to protect. Because the summary judgment record established that Handlin's report was not an activity protected by the WPA, Handlin cannot establish a prima facie case for unlawful retaliation pursuant to the Maine Human Rights Act, and Broadreach is entitled to a summary judgment on Count 1 of the complaint. *See Bonin v. Crepeau*, 2005 ME 59, ¶ 8, 873 A.2d 346.

## 2. Discrimination

[¶14] Handlin also contends that Broadreach discriminated against her in violation of 26 M.R.S. § 570. Section 570 prohibits discrimination against an employee "because that employee has filed any complaint concerning an alleged occupational safety or health hazard or has testified or is about to testify

10

in any proceeding relating to employee safety and health or because of the exercise by the employee on behalf of the employee or others of any right under [Chapter 6, entitled 'Occupational Safety Rules']." 26 M.R.S. § 570. Based on the admitted facts and summary judgment record, Handlin's report about the alleged conduct of her boss at a private party does not fall within the plain meaning of section 570 because the alleged conduct did not concern an occupational safety or health hazard, or otherwise relate to employee safety and health.

[¶15] Because the evidence in the light most favorable to Handlin does not establish a prima facie case of retaliation, termination, or discrimination pursuant to the WPA, the Maine Human Rights Act, or 26 M.R.S. § 570, summary judgment in favor of Broadreach on Count 1 as a matter of law was appropriate.

**B.   Motion for Relief from Judgment**

[¶16] Handlin contends that Broadreach used ineffective service for its "voluminous summary judgment records" that deprived her of due process, namely, the opportunity to participate and be heard in opposition to the summary judgment. Handlin argues that M.R. Civ. P. 5(b) excludes summary judgment records in excess of fifty pages from electronic service and that the

court's summary judgment in favor of Broadreach is thus void as the term is used in M.R. Civ. P. 60(b)(4).[5]

[¶17] We review the court's ruling on the alleged due process violation de novo because there is no room for a court to exercise discretion if a judgment is void as the term is used in M.R. Civ. P. 60(b)(4). *Reliable Copy Serv., Inc. v. Liberty*, 2011 ME 127, ¶ 8, 32 A.3d 1041; *Foley v. Adam,* 638 A.2d 718, 719 (Me. 1994).

[¶18] Contrary to Handlin's contention, M.R. Civ. P. 5(b) does not prohibit a party moving for summary judgment from serving summary judgment records over fifty pages by electronic transmission. The rule permits service of documents "to the last known electronic mail address provided to the court" and provides that "any record in support of summary judgment in excess of 50 pages . . . [is] *not required* to be produced or transmitted in electronic format." M.R. Civ. P. 5(b)(2) (emphasis added). The rule does not provide that electronic transmission is not *permitted* for a summary judgment record in excess of fifty pages. Broadreach chose to serve Handlin with the summary judgment record electronically pursuant to this permissive rule. As such,

---

[5] Although momentarily raised at oral argument, Handlin failed to brief her contention that the court erred in finding that her failure to see or read the electronic filing from Broadreach was not excusable neglect. We decline to consider this unbriefed issue. *See Mehlhorn v. Derby,* 2006 ME 110, ¶ 11, 905 A.2d 290; *Holland v. Sebunya,* 2000 ME 160, ¶ 9 n.6, 759 A.2d 205.

Broadreach's electronic service was "complete when transmitted, . . . presumed to have been received by the intended recipient, and [had] the same legal effect as the service of an original paper document."   M.R. Civ. P. 5(b)(2).   The court did not err in denying Handlin's motion for relief pursuant to M.R. Civ. P. 60(b)(4) because Broadreach's electronic service did not violate Handlin's right to due process.

The entry is:

Judgment affirmed.

---

Jeffrey Bennett, Esq. (orally), Legal-Ease, LLC, South Portland, for appellant Margaret Handlin

Carol I. Eisenberg, Esq. (orally), Richardson, Whitman, Large & Badger, Portland, for appellee Broadreach Public Relations, LLC

Cumberland County Superior Court docket number CV-2020-98
FOR CLERK REFERENCE ONLY