STATE OF MAINE                           BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                          CIVIL ACTION
                                         DOCKET NO. BCD-CIV-2021-00037


SCOTT JACQMIN,                    )
                                 )
                Plaintiff,        )
                                 )
                                 )
          v.                      )        ORDER GRANTING MOTION
                                 )        FOR SUMMARY JUDGMENT
                                 )        IN FAVOR OF DEFENDANT
                                 )        SAVILINX
SAVILINX,                         )
                                 )
                Defendant.        )


## INTRODUCTION

This case is about a dispute underlying an employee's termination. Plaintiff Scott Jacqmin ("Jacqmin") brings claims for violation of Maine's Whistleblower Protection Act, 26 M.R.S.A. § 831 *et seq.* ("Count I"), and for invasion of privacy ("Count II"). At present before the Court is Defendant SaviLinx's ("SaviLinx") Motion for Summary Judgment under Maine Rule of Civil Procedure 56(b) as to each claim. For the reasons discussed below, the Court GRANTS summary judgment to SaviLinx on Counts I and II.

## STANDARD OF REVIEW

Summary judgment is appropriate when the parties' statements of material facts and the portions of the record referenced therein "disclose no genuine issues of material fact and reveal that one party is entitled to judgment as a matter of law." *Currie v. Indus. Sec., Inc.*, 2007 ME 12, ¶ 11, 915 A.2d 400 (citing M.R. Civ. P. 56(c)). "A material fact is one that can affect the outcome of the case, and there is a genuine issue when there is sufficient evidence for a fact finder to choose between competing versions of the fact." *Lougee Conservancy v. CitiMortgage, Inc.*, 2012 ME

1

103, ¶ 11, 48 A.3d 774 (quoting *Stewart-Dore v. Webber Hosp. Ass'n*, 2011 ME 26, ¶ 8, 13 A.3d 773). The Court must view the parties' statements of material facts in the light most favorable to the non-movant and must draw all reasonable inferences in favor of the same. *See Levis v. Konitzky*, 2016 ME 167, ¶ 19, 151 A.3d 20.

To withstand a motion for a summary judgment, the plaintiff must establish "a prima facie case for each element of [their] cause of action[, but if] a plaintiff does not present sufficient evidence on the essential elements [then] the defendant is entitled to a summary judgment." *Watt v. UniFirst Corp.*, 2009 ME 47, ¶ 21, 969 A.2d 897 (citations omitted). That is, a defendant is entitled to summary judgment when "the plaintiff presents insufficient evidence on an essential element in [their] cause of action, such that 'the defendant would . . . be entitled to judgment as a matter of law on that state of the evidence at trial.'" *Doyle v. Dep't of Hum. Servs.*, 2003 ME 61, ¶ 9, 824 A.2d 48 (quoting *Johnson v. Carleton*, 2001 ME 12, ¶ 11, 765 A.2d 571).

FACTS

For the limited purpose of deciding SaviLinx's Motion for Summary Judgment, this Court finds the following material facts[1] undisputed:

SaviLinx is a Maine business entity with a primary place of business in Brunswick, Maine. (Pl.'s Compl. ¶ 3.) Jacqmin was employed by SaviLinx beginning during 2015 and through May 10, 2019. (Pl.'s Compl. ¶ 6; Supp.'g S.M.F. ¶ 1.) On or about September 30, 2015, as part of SaviLinx's hiring process Jacqmin signed a Photo Release Form permitting SaviLinx "its representatives and employees the right to take photographs" of him, and which authorized

---

[1] "Documents that are unaccompanied by an authenticating affidavit based on personal knowledge under Maine Rule of Civil Procedure 56(e) should not be considered for purposes of summary judgment." *Emery Lee & Sons, Inc. v. Acadia Ins. Grp., LLC*, 2016 WL 1706499, *5 (citing *Cach LLC v. Kulas*, 2011 ME 70, ¶ 11, 21 A.3d 1015). Accordingly, the Court has disregarded any such documents. The Court has also disregarded any statement of fact not properly supported by a specific record citation. M.R. Civ. P. 56(h)(4).

SaviLinx and "its assigns and transferees to copyright, use and publish the [photographs] in print and/or electronically." (Supp.'g S.M.F. ¶ 2; Jacqmin Dep. Ex. 3.4.) Further, the release form permitted SaviLinx to use photographs of Jacqmin taken in accordance therewith "with or without [Jacqmin's] name for any lawful purpose, including . . . as publicity, illustration, advertising and Web content." (Supp.'g S.M.F. ¶ 2; Jacqmin Dep. Ex. 3.4.)

As part of Jacqmin's job for SaviLinx, he provided information by telephone to participants in a federal employee benefits program known as "FEDVIP." (Supp.'g S.M.F. ¶ 3.) To perform this aspect of his job, Jacqmin was provided access to private information belonging to FEDVIP participants. (Supp.'g S.M.F. ¶ 4.) Jacqmin's job also entailed maintenance of the confidentiality of FEDVIP participants' private healthcare information in accordance with the Health Insurance Privacy and Accountability Act of 1996 ("HIPAA"), and designation of client data as "Protected Healthcare Information" ("PHI") within the meaning of HIPAA.[2] (Opp. S.M.F. ¶ 3). Jacqmin received training from SaviLinx, at the outset of his employment and annually, on the application of HIPAA to his job duties, and he could distinguish confidential PHI from non-PHI. (Supp.'g S.M.F. ¶¶ 7, 9-11.) SaviLinx's training program mandated that Jacqmin and other employees of

_____

[2] "'PHI' is any individually identifiable health information relating to the . . . health condition of [an] individual regardless of the form in which it is maintained." (Jacqmin Dep. Ex. 20, 1.) "A name or social security number by itself is not considered PHI. But combine that information with something related to that person's health, and it becomes PHI." (*Id.*) HIPAA is breached when PHI is improperly used or disclosed. (*Id.* at 3.) According to the federal rules, "Breach" means impermissible "acquisition, access, use, or disclosure of [PHI] . . . which *compromises the security or privacy*" thereof. 45 C.F.R. § 164.402 (2013) (emphasis added). Excluded from the definition of "breach" within the meaning of HIPAA is "disclosure of [PHI] where a covered entity or business associate has a good faith belief that an unauthorized person to whom the disclosure was made would not reasonably have been able to retain such information." *Id.* § 164.402(1)(iii). Implicitly, this exclusion need not be applied when the unauthorized person to whom the disclosure was made could not first obtain the PHI. "Unsecured" PHI is PHI that is "not rendered unusable, unreadable, or indecipherable to unauthorized persons" through the use of technology or methodology specified by the Guidance to Render Unsecured Protected Health Information Unusable, Unreadable or Indecipherable to Unauthorized Individuals, 74 Fed. Reg. 42,740, 42,742 (Aug. 24, 2009). 45 C.F.R. § 164.402. PHI detailed in paper, film, or other hard copy media are secured or protected when the media is shredded or destroyed "such that the PHI cannot be read or otherwise cannot be reconstructed." Guidance to Render Unsecured Protected Health Information Unusable, Unreadable or Indecipherable to Unauthorized Individuals, 74 Fed. Reg. 42,740, 42,742-743 (Aug. 24, 2009) (codified in part at 45 C.F.R. § 164.402).

SaviLinx, when a HIPAA breach occurred, "quickly investigate the breach, mitigate it, document it, and then notify the covered entity whose information was affected as well as potentially the Office of Civil Rights at the Department of Health and Human Services." (Jacqmin Dep. Ex. 20, 3.)

While employed by SaviLinx, Jacqmin was provided a workstation with two computer monitors. (Supp.'g S.M.F. ¶ 13.) As was typical in his work for SaviLinx, Jacqmin would keep open numerous software programs at any given time for his use when assisting clients, and he would toggle between them on the two monitors as appropriate based on the tasks he performed. (Supp.'g S.M.F. ¶ 14.) These software programs included "clock-in" software that tracked Jacqmin's working time, programs used for interacting with FEDVIP participants, and other ancillary programs. (Supp.'g S.M.F. ¶ 15.) Thus, at any given time Jacqmin's monitors might, or might not, display a FEDVIP participant's PHI. (Supp.'g S.M.F. ¶ 16.)

SaviLinx designed and implemented various policies to protect against possible violations of HIPAA. (Pl.'s Reply S.M.F. ¶ 2). For example, SaviLinx posted signage at its Brunswick office in the area of Jacqmin's workstation indicating its policy that use of cell phones was prohibited there. (Supp.'g S.M.F. ¶ 30.) At all relevant times, these policies were enforced at the discretion of SaviLinx's management. (Supp.'g S.M.F. ¶ 33; Opp. S.M.F. ¶ 33.)

During his employment by SaviLinx, Jacqmin was photographed seated at his workstation by a representative of SaviLinx ("the Photograph"). (Supp.'g S.M.F. ¶ 20). The Photograph shows Jacqmin as well as the workstation environment, including Jacqmin's two computer monitors. (Opp. S.M.F. ¶ 20; Pl.'s Reply S.M.F. ¶ 8.) At the time the Photograph was taken, one of Jacqmin's computer monitors displayed customer-facing information. (Supp.'g S.M.F. ¶ 21.) Jacqmin is

unsure whether the information was a FEDVIP participant's PHI, although he believes it was. (Supp.'g S.M.F. ¶ 22.)

Ultimately, the Photograph was incorporated into the design for a promotional "rack card" for SaviLinx's use (the "Card"). (Supp.'g S.M.F. ¶¶ 17-18; Jacqmin Dep. Ex. 3.1.) As printed on the Card, none of the information displayed on Jacqmin's computer monitors at the time the photograph was taken was legible to the naked eye. (Supp.'g S.M.F. ¶ 23; Opp. S.M.F. ¶ 23.) On or about August 22, 2018, SaviLinx provided the Card to other employees to distribute to interested candidates for employment with SaviLinx. (Pl.'s Reply S.M.F. ¶ 12.) Upon learning about this, Jacqmin reported his concern that the Photograph constituted a breach of HIPAA to SaviLinx management, and SaviLinx agreed to stop distributing the Card with the Photograph printed thereon. (Pl.'s Reply S.M.F. ¶¶ 13-14.) On or about October 30, 2018, Jacqmin observed copies of the Card displayed by SaviLinx at an in-house hiring event that it hosted. (Supp.'g S.M.F. ¶ 19; Pl.'s Reply S.M.F. ¶ 9.) Believing in good faith that the Card violated HIPAA, Jacqmin suffered emotional distress and anxiety that resulted in him being out of work for two weeks. (Pl.'s Reply S.M.F. ¶ 16.)

Contemporaneously with the Photograph, SaviLinx produced two videos of Jacqmin for promotional purposes. (Supp.'g S.M.F. ¶ 25; Jacqmin Dep. Ex. 3.3.) One of these videos shows Jacqmin seated at his workstation from a side-view (the "Second Video"). (Pl.'s Compl. ¶ 8; Supp.'g S.M.F. ¶ 25; Jacqmin Dep. Ex. 3.3.) Jacqmin coordinated with SaviLinx to ensure that, at the time the Second Video was produced, his workstation, including his two computer monitors, would be clear of any FEDVIP participant's PHI or other confidential client information. (Supp.'g S.M.F. ¶ 26.) Similar to the Photograph, the Second Video shows Jacqmin's righthand computer monitor's screen. (Supp.'g S.M.F. ¶ 28.) Each image (the Photograph and the Second Video's

display) of Jacqmin's workstation shows a blue stripe near bottom of the monitor's display, and a gray stripe near the top. (Supp.'g S.M.F. ¶ 28.) Neither video captures nor displays any FEDVIP participant's PHI, nor do they reflect a violation of HIPAA. (Supp.'g S.M.F. ¶¶ 27, 29; Opp. S.M.F. ¶¶ 27, 29.)

Jacqmin believed that a person observing the Card with the Photograph printed on it would view him as one who does not respect PHI and who violates HIPAA. (Supp.'g S.M.F. ¶ 34.) During November 2018, he filed a formal HIPAA complaint with state and federal agencies. (Jacqmin Dep. 164:14-25, 165:1-11; Pl.'s Reply S.M.F. ¶ 18.) Jacqmin alleges that, as a result of his HIPAA complaint, he was subjected to forms of harassment by SaviLinx. (Pl.'s Reply S.M.F. ¶¶ 19-20; Def.'s Reply S.M.F. ¶¶ 19-20.) Jacqmin's employment with SaviLinx was eventually terminated during May 2019. (Supp.'g S.M.F. ¶ 1; Pl.'s Reply S.M.F. ¶ 22; Def.'s Reply S.M.F. ¶22.) The Photograph is Jacqmin's sole basis for his invasion of privacy claim. (Supp.'g S.M.F. ¶ 35.)

DISCUSSION

Jacqmin asserts two issues flowing from the Photograph. First, he argues SaviLinx violated Maine's Whistleblower Protection Act (the "WPA") at 26 M.R.S.A. § 831 *et seq.* when, after he engaged in a protected activity within the meaning of the WPA by reporting to SaviLinx and then government agencies that he believed SaviLinx's use of the Photograph violated HIPAA, it subjected him to adverse employment actions and then terminated him as a result of his reports. Jacqmin next argues that SaviLinx's publication of the Photograph on the Card used for promotional purposes amounted to an invasion of his privacy, portrayal of him in a false light, and a misappropriation of his image because it showed him participating in conduct that he believed violated HIPAA, which would be highly offensive to a reasonable person.

6

SaviLinx seeks summary judgment in its favor for each of Jacqmin's claims. As to Jacqmin's WPA claim, SaviLinx argues it is entitled to summary judgment because Jacqmin had no reasonable cause to believe the Photograph constituted a violation of HIPAA, and therefore he did not engage in a "protected activity" within the meaning of the WPA. SaviLinx also argues Jacqmin's invasion of privacy claims must fail because he signed the release form authorizing SaviLinx to photograph him in connection with its business and to use of his image. SaviLinx further argues that Jacqmin's false light claim fails as a matter of law because the Photograph does not portray any falsity about him, and that the purported appropriation of Jacqmin's image would not cause mental distress and injury to another possessed of ordinary feelings and intelligence.

I. <u>SaviLinx is entitled to summary judgment for Count I of Jacqmin's Complaint because Jacqmin's reporting does not amount to activity protected by the WPA.</u>

The Maine Human Rights Act prohibits employers from discriminating against employees because of actions protected under the WPA. *Goucher v. Dep't of Pro. and Fin. Regul.*, 2015 ME 44, ¶ 12, 114. A.3d 988 (citation omitted). "To prevail on a WPA claim, an employee must show that (1) [they] engaged in activity protected by the WPA; (2) [they] experienced an adverse employment action; and (3) a causal connection existed between the protected activity and the adverse employment action." *Id.* (citation omitted). At issue is whether Jacqmin's reporting regarding the Photograph and the purported resulting HIPAA violation to SaviLinx and then to state and federal agencies constituted activity protected by the WPA.[3]

The WPA provides that no employer may discharge, threaten or otherwise discriminate against an employee regarding the employee's terms and conditions of employment because the

_____

[3] In his Complaint, Jacqmin also asserts SaviLinx's actions violate 26 M.R.S.A. § 570, which prohibits discrimination against employees "because that employee has filed any complaint concerning an alleged occupational safety or health hazard . . ." *Handlin v. Broadreach Pub. Rels., LLC*, 2022 ME 2, ¶ 14, 265 A.3d 1008 (citing 26 M.R.S. § 570 (2021)). Because Jacqmin's reports in this matter were not concerned with conduct regarding an "occupational safety or health hazard" within the plain meaning of 26 M.R.S.A. § 570, he cannot establish a prima facie case for a violation of this statute by SaviLinx. *See Id.* ¶¶ 14-15.

employee, acting in good faith, reports orally or in writing to the employer or a public body what the employee has reasonable cause to believe is a violation of Maine or federal law. 26 M.R.S.A. § 833(1)(A) (2007). This means that an employee is required to prove their good faith belief that the employer's reported conduct was unlawful, and that "a reasonable person might have believed that the employer was acting unlawfully." *Bard v. Bath Iron Works, Corp.*, 590 A.2d 152, 155 (Me. 1991). This "reasonable cause" requirement "is met only when the employee presents evidence showing [they] had a subjective belief that the employer engaged in illegal activity and the belief was objectively reasonable in that a reasonable person might have believed illegal activity occurred." *Lee v. Town of Denmark*, 2019 ME 54, ¶ 8, 206 A.3d 907 (citation omitted).

Summary judgment for SaviLinx is improper if the undisputed evidence discloses Jacqmin had reasonable cause to believe SaviLinx's production and distribution of the Photograph was unlawful because it constituted a breach within the meaning of HIPAA. HIPAA is breached by conduct that "compromises the security or privacy" of PHI. 45 C.F.R. § 164.402. Here, the Photograph alone does not compromise the security or privacy of any PHI it allegedly captures. It is undisputed that no information from Jacqmin's computer monitor, let alone any numeral, letter, or symbol, is immediately legible in the Photograph, clearly or otherwise.[4] Even if Jacqmin has reasonable cause to believe that PHI was on display at the time the Photograph was taken, such reasonable cause for belief does not extend to the proposition that the Photograph itself compromises the security or privacy of any such PHI. Viewing the parties' statements of material facts in the light most favorable to Jacqmin, it is unreasonable to infer that another employee of SaviLinx's in the same circumstances as Jacqmin would reasonably believe the Photograph as reproduced on the Card compromised the security or privacy of PHI. There is not sufficient

---

[4] And Jacqmin has failed to create even a genuine dispute of material fact that it is possible to magnify the Card such that the content of the computer monitor would be legible, or that such a concern would be reasonable.

evidence to require a fact finder to choose between competing versions of this fact. Thus, Jacqmin's contention that his reporting was "activity protected by the WPA" cannot succeed, nor can Count I of his Complaint. Because it "founders on the first element of the required showing," Jacqmin's WPA claim cannot proceed. *See Robson v. Shaws Supermarkets, Inc.*, 411 F. Supp. 3d 58, 75 (D. Me. Sept. 6, 2019). Summary judgment must be granted for SaviLinx on Count I of Jacqmin's Complaint.

II. SaviLinx is entitled to summary judgment for Jacqmin's invasion of privacy claims.

Jacqmin's assertions that summary judgment for SaviLinx is inappropriate and must be denied as to each of his invasion of privacy claims are interwoven by a common thread: that Jacqmin's image was disseminated by SaviLinx together with confidential PHI in the Photograph as reproduced in the Card. As discussed, there is insufficient evidence to generate a dispute regarding the presence of PHI in the Photograph. Accordingly, SaviLinx is entitled to summary judgment for Count II of Jacqmin's Complaint.

*A. There is insufficient evidence to generate a dispute as to whether Jacqmin was portrayed in a "false light" by SaviLinx's production and dissemination of the Photograph.*

Liability for publicity placing a person in a false light requires proof that 1) the false light in which the person was placed would be highly offensive to a reasonable person, and 2) the actor had knowledge of or acted in reckless disregard as to the falsity of the publicized matter and the false light in which the other would be placed. *See Cole v. Chandler*, 2000 ME 14, ¶ 17, 752 A.2d 1189 (quoting Restatement (Second) of Torts § 652E (Am. Law Inst. 1977)). "Publicity" in this context means "that the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be regarded as substantially certain to become one of public knowledge." *Id.* (quoting Restatement (Second) of Torts § 652D cmt. a (Am. Law Inst. 1977)). Such publicity must be undertaken in a manner that links the person portrayed to the alleged

9

wrongdoing, or otherwise portrays them in a false light. *See Perkins v. City Enterprises, LLC*, No. CV-03-190, 2004 WL 31962056, at *6 (Me. Super. Ct. Nov. 18, 2004) (citing *Cole*, 2000 ME 14, ¶ 18, 752 A.2d 1189).

The parties' statements of material facts do not disclose sufficient evidence of any HIPAA violation from breached PHI or other "wrongdoing." Therefore, the Photograph as reproduced in the Card cannot reasonably be said to create a false impression regarding Jacqmin's commitment and respect to HIPAA law and customer privacy. Absent sufficient evidence to support a prima facie case for each element of Jacqmin's false light claim, SaviLinx is entitled to summary judgment thereon.

> B. *Jacqmin executed a release form that permitted SaviLinx's production and use of the Photograph at issue for SaviLinx's benefit.*

"One who appropriates to [their] own use or benefit the name or likeness of another is subject to liability to the other for invasion of [their] privacy." *Nelson v. Maine Times*, 373 A.2d 1221, 1224 (Me. 1977) (quoting Restatement (Second) of Torts § 652C (Am. Law Inst. 1977)). To be liable, a defendant must anticipate that the appropriation would cause mental distress and injury to a person of ordinary sensibilities. *Id.* The appropriation must also benefit the defendant. *Id.* The defendant must be the one responsible for the appropriation. *Simpson v. Cent. Maine Motors, Inc.*, 669 A.2d 1324, 1326 (Me. 1996).

The cause of action for appropriation may be available when a party does not execute a release form associated with the reproduction and use of their name or likeness. *See Powers v. PT Showclub*, No. CV-11-0267, 2011 Me. Super. LEXIS 216, at *1, *7-9 (Aug. 23, 2011). In this case, on September 30, 2015, Jacqmin executed the aforementioned Photo Release Form granting SaviLinx "the right to take photographs" of him "in connection with" SaviLinx's business, and wherein Jacqmin agreed that SaviLinx "may use such photographs" of him "for any lawful

10

purpose, including for . . . publicity." (Jacmin. Dep. Ex. 3.4.) Jacqmin interprets the release to prohibit more than publication by SaviLinx of any image featuring him or his likeness together with PHI (which Jacqmin construes as an "unlawful use" within the meaning of HIPAA and therefore not a "lawful purpose" within the meaning of the release). Jacqmin further reduces the meaning of the release to permit photography of his person only, for example a "headshot," but not his workstation.

The Court is not persuaded that the release form might not apply to the Photograph at issue. SaviLinx's intended use of the Photograph was for a "lawful purpose," as no HIPAA violation or breach of PHI occurred when the Photograph was reproduced in the Card. Jacqmin concedes that a photograph of his person would be "lawful" when no PHI is compromised. (Pl.'s Opp. to Def.'s Mot. Summ. J. 11.) Accordingly, there is insufficient evidence available to dispute the release form's applicability. Because Jacqmin permitted SaviLinx's production of the Photograph and their use thereof to benefit SaviLinx's business, his misappropriation claim cannot proceed as a matter of law.

## CONCLUSION

For the foregoing reasons, Defendant SaviLinx's Motion for Summary Judgment is GRANTED and the Court enters judgment in favor of SaviLinx on Counts I and II of Plaintiff Scott Jacqmin's Complaint. Since Counts I and II are the only Counts remaining, the Court enters final judgment in favor of SaviLinx.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

So Ordered.

Dated: __09/20/2022__

_____
Michael A. Duddy, Judge
Business and Consumer Court

11          Entered on the docket: 09/20/2022

BCD-CIV-2021-37

SCOTT JACQMIN

     *Plaintiff(s)*

*v.*

SAVILINX

     *Defendant(s)*


<u>Party Name:</u>                        <u>Attorney Name:</u>

*Scott Jacqmin*                 Jeffrey Bennet, Esq.
                                    Legal Ease LLC, PA
                                    198 Maine Mall Road Box 15
                                    South Portland, ME 04106

*SaviLinx*                     Daniel Rosenthal, Esq.
                                    Marcus Clegg
                                    16 Middle Street Suite 501
                                    Portland, ME 04101-5166

SCOTT JACQMIN,

     Plaintiff,

   v.

SAVILINX,

     Defendant.

)
)
)
)
)
)
)
)
)
)
)

**ORDER GRANTING IN PART AND DENYING IN PART SAVILINX'S MOTION TO DISMISS**

Plaintiff Scott Jacqmin ("Jacqmin") has brought a four count Complaint against Defendant Savilinx ("Savilinx"). Count I alleges employment discrimination and retaliation in violation of *inter alia* the Maine Whistleblower Protection Act, 26 M.R.S.A. § 831 et. seq.; Count II alleges invasion of privacy; Count III alleges Intentional Inflict of Emotional Distress; and Count IV alleges Negligent Infliction of Emotional Distress. In response, Savilinx has filed a Motion to Dismiss all four counts pursuant to M.R. Civ. P. 12(b)(6) for failure to state a claim. In support of its Motion, Savilinx also asks the Court to consider certain photographs, videos, and documents pursuant to the *Moody* exception. *See Moody v. State Liquor & Lottery Comm'n*, 2004 ME 20, ¶ 10, 843 A.2d 43. For the reasons discussed below, the Court declines to invoke the *Moody* exception; denies the Motion with regard to Counts I and II; and grants the Motion with regard to Counts III and IV.[1]

**LEGAL STANDARD**

_____

[1] Counsel have filed well-written and comprehensive briefs. Accordingly, rather than delaying the case by waiting several weeks for the opportunity to conduct oral argument, the Court is ruling on the Motion without hearing as authorized by M.R. Civ. P. 7(b)(7).

1

When reviewing a motion to dismiss under Rule 12(b)(6), the Court "consider[s] the facts in the complaint as if they were admitted." *Bonney v. Stephens Mem. Hosp.,* 2011 ME 46, ¶ 16, 17 A.3d 123. The complaint is viewed "in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory. *Id.* (quoting *Saunders v. Tisher,* 2006 ME 94, ¶ 8, 902 A.2d 830). "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that [it] might prove in support of [its] claim." *Id.* However, the Court is not required to accept as true allegations that are merely legal conclusions couched as factual allegations. *See, e.g., Bryan R. v. Watchtower Bible and Tract Society of New York, Inc.,* 1999 ME 144, ¶¶ 20-22, 738 A.2d 839; *Courtois v. Maine Pub. Employees Retirement Sys.,* No. AP-11-26, 2012 WL 609567 (Me. Super. Ct. Jan 17, 2012).

## FACTS

Before stating the facts the Court must determine whether it is going to consider the material provided by Savilinx, even though that material was not attached to the Complaint. Under the *Moody* exception the Court can consider official public documents, documents that are central to Plaintiff's claim, and the documents referred to in the Complaint, without converting a motion to dismiss into a motion for summary judgment when the authenticity of such documents is not challenged. *Moody,* 2004 ME 20, ¶¶ 9-10, 843 A.2d 43. Here, the materials submitted by Savilinx are not official public documents, may or may not be central to Plaintiff's claim, are not specifically referred to in the Complaint, and have not been authenticated. It seems apparent the materials are central to Savilink's defense, but that is not a basis for applying the *Moody* exception. Accordingly, the Court does not consider the materials in deciding the Motion to Dismiss.

The following facts pled in the Complaint are considered as if they are admitted. Jacqmin was an employee of Savilinx from 2015 to May 10, 2019. Savilinx is a marketing or public relations firm, employing approximately 1,112 employees. Jacqmin performed his job satisfactorily and was identified as having excellent customer service skills. On multiple dates beginning on or about August 27, 2018, Jacqmin reported to Savilinx management what he believed in good faith were violations of law, including specifically HIPAA law violations and misuse or misappropriation of his likeness or image. Specifically, Jacqmin reported to management that Savilinx was creating and publishing imagery in violation of HIPAA and that he did not want his image used in connection with what he believed in good faith to be an unlawful and wrongful use or context. In November 2018, Jacqmin filed a formal HIPAA complaint with state or federal agencies and complained to his immediate supervisor. On January 9, 2019, Jacqmin complained to Savilinx's Chief Executive Officer.

Soon after reporting his complaints Jacqmin was subjected to harassment and retaliation at work. Jacqmin reported this harassment and retaliation to his immediate supervisor and to other Savilinx managers. Savilinx failed to investigate Jacqmin's complaints and took no steps to protect Jacqmin from harassment and retaliation. Rather, Savilinx's managers told Jacqmin to stop complaining. On May 10, 2019, Savilinx discharged Jacqmin for what he alleges were pretextual reasons. Jacqmin suffered damages, including but not limited to emotional distress.

## DISCUSSION

The gist of Savilinx's argument – shorn of any reliance on the extraneous materials excluded by the Court – is that Jacqmin has failed to plead with particularity the facts needed to establish the *prima facie* elements for each Count of the Complaint. The gist of Jacqmin's

3

opposition is that under Maine's relaxed notice pleading practice, he has pled the facts well enough to put Savilinx on notice of his claims. The arguments of both parties are partially correct.

For analytical purposes, it is convenient to divide the Complaint into two halves: Counts I (statutory employment discrimination) and II (invasion of privacy) in the first half, and Counts III (intentional infliction) and IV (negligent infliction) in the second half. The counts in the first half are subject to ordinary notice pleading rules. A plaintiff must plead enough facts to make out the *prima facie* elements of each count, but the Court does not perform any heightened gatekeeper role. *See* M. R. Civ. P. 8(a)(1); *Johnson v. Me. Energy Recovery Co., Ltd. P'ship,* 2010 ME 52, ¶ 16, 997 A.2d 741. Viewing Count I in the light most favorable to Jacqmin, the facts pled by Jacqmin establish that he engaged in protected activity, he experienced adverse employment action, and there is a causal connection. *See Galouch v. Dept. of Prof. & Financial Reg.*, 2015 ME 44, ¶ 12, 114 A.3d 988. Savilinx protests that the Complaint does not specify in detail the precise nature of Jacqmin's HIPAA concerns. However, "[a] complaint need not identify particular legal theories that will be relied upon…" *Johnson,* 2010 ME 52, ¶ 17, 997 A.2d 741. The facts pled in the Complaint put Savilinx on notice that Jacqmin believed the use or context of the imagery involved constituted a HIPAA violation. Having been appropriately put on notice, Savilinx can now ferret out the details through the discovery process.[2] Savilinx's Motion is denied as to Count I.

Similarly, Savilinx has been sufficiently put on notice regarding Jacqmin's Count II violation of privacy claim. Through the facts alleged in his Complaint, Jacqmin claims—at a minimum—that  by filming and photographing him in a manner that constitutes a HIPAA violation, and then distributing the imagery to the public, Savilinx has placed him in a false light

---

[2] Whether Jacqmin had an "objectively reasonable belief" can also be explored through discovery.

in the public eye. *See Berthiaume's Est. v. Pratt,* 365 A.2d 792, 795 (Me. 1976). Viewing the facts in the light most favorable to Jacqmin, the factual allegations are sufficient to survive the Motion to Dismiss. Savilinx's Motion is denied as to Count II.

The counts in the second half of the Complaint are a different matter. Regarding these counts, the Court plays more of a gatekeeper role. The Count III claim for intentional infliction of emotional distress requires alleging facts establishing conduct that "was so extreme and outrageous as to exceed all possible bounds of decency and must be regarded as atrocious[] and utterly intolerable in a civilized community." *Davis v. Currier,* 1997 ME 199, ¶ 5, 704 A.3d 1207. "[I]t is for the Court to determine in the first instance whether the defendant's conduct may reasonably be regarded as so extreme and outrageous to permit recovery." *Champagne v. Mid-Me. Med. Ctr.,* 1998 ME 87, ¶ 16, 711 A.2d 1086, 1090 (Me. 1995) (citing *Colford v. Chubb Life Ins. Co. of Am.,* 687 A.2d 609, 616 (Me. 1996)). The facts pled in the Complaint come nowhere close to meeting that standard. Employment discrimination is, unfortunately, commonplace. The nature of the privacy violation alleged here is not extreme. As a matter of law, these allegations fall short of the standard for actionable conduct necessary for a claim of intentional infliction of emotional distress. *See Argereow v. Weisberg,* 2018 ME 140, ¶ 28, 195 A.3d 1210. Furthermore, Jacqmin's factual allegations do not place his emotional distress at a level where it could be characterized as "so severe that no reasonable person could be expected to endure it." *Id.* ¶ 29. Savilinx's Motion is granted as to Count III.

Similarly, the Law Court has been parsimonious about extending the tort of negligent infliction of emotional distress beyond bystander liability actions, and circumstances in which a special relationship exists between the plaintiff and the alleged tortfeasor. *See Curtis v. Porter,* 2001 ME 158, ¶ 19, 784 A.2d 18. This is not a bystander case. Further, the Complaint does not

allege any facts from which it could be found there was a "special relationship" between Jacqmin and Savilinx. *See Berry v. WorldWide Language Res., Inc.,* 716 F. Supp. 2d 34, 53 (D. Me. 2010) (the employer-employee relationship does not qualify as a special relationship for NEID claims). Accordingly, as a matter of law the allegations contained in the Complaint fail to establish the necessary special relationship. Savilinx's Motion is granted as to Count IV.

**CONCLUSION**

For all the foregoing reasons, Savilinx's Motion to Dismiss is denied as to Counts I and II, and granted as to Counts III and IV. Counts III and IV are dismissed.

So Ordered.

The Clerk is instructed to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: July 1, 2021

_____
Judge, Business and Consumer Court

6

SCOTT JACQMIN

     *Plaintiff(s)*

*v.*

SAVILINX

     *Defendant(s)*


<u>Party Name:</u>

<u>Attorney Name:</u>

*Scott Jacqmin*

Jeffrey Bennet, Esq.
     Legal Ease LLC, PA
     198 Maine Mall Road Box 15
     South Portland, ME 04106

*SaviLinx*

Daniel Rosenthal, Esq.
     Marcus Clegg
     16 Middle Street Suite 501
     Portland, ME 04101-5166

*ESPO*, *LLC*
*GOODY, LLC*
*TLNK*, *LLC*

David Hirshon, Esq.
     Hirshon Law Group PC
     PO Box 124
     40 Regatta Drive
     Freeport, ME 04032